## OWEN and BELLOWS *vs.* JANE F. CAWLEY and SAMUEL B. CAWLEY.

Where a married woman having a separate estate and transacting business on her own account, by her husband as her agent, employs attorneys to commence suits upon accounts growing out of the wife's business, the separate estate of the wife is liable for such services rendered by the attorneys as are found to have been for the benefit of the wife and her separate estate.

If the suits and proceedings were instituted for the purpose of benefiting the wife's separate estate, the fact that they, or some of them, were unsuccessful, is not of controlling importance, on the question of the liability of her separate estate.

IN 1856, J. C. Slaight, a ship chandler, bought out M. T. Runyon's stock in trade and business, as a ship chandler, in South street, in the city of New York. To enable him to pay for the same, he procured Mrs. Jane F. Cawley to give a conveyance of certain lots she owned in Harlem, and also of some Flushing Rail Road bonds, to said Runyon. To secure Mrs. Cawley for the consideration of the said conveyances, which were valued at $4000, J. C. Slaight executed a bond, and a mortgage on the stock in trade which was so purchased, to Mrs. Jane F. Cawley. The motive which probably induced Mrs. Cawley to give the conveyances aforesaid was that her husband, S. B. Cawley, immediately entered into a partnership with J. C. Slaight under the firm of J. C. Slaight & Co. This firm continued for some three

months, when it was abruptly brought to a close by one of J. C. Slaight's individual creditors levying on the stock in trade of the firm. Thereupon the firm dissolved. The execution creditor withdrew his levy on his being satisfied as to costs, and Mrs. Cawley received the goods in the store, and by her husband took possession of the stock, in satisfaction of the chattel mortgage. At the same time the outstanding accounts, due to the firm of J. C. Slaight & Co., were assigned over to Jane F. Cawley, with the understanding expressed, in writing, that she was to put them in her husband's hands to be collected for the benefit of the creditors of J. C. Slaight & Co. She had no interest in the accounts thus assigned. After the transfer to her, Mrs. J. F. Cawley carried on the business of ship chandlery in her own name, with the aforesaid stock in trade and goods purchased out of the avails and accumulations of the business. In that business Samuel B. Cawley acted as her agent, under a restricted authority, as the defendant claimed. Samuel B. Cawley subsequently employed the respondents to collect some of the debts due J. F. Cawley, created in the business done by him in the name of his wife; also to collect some of the accounts assigned by J. C. Slaight & Co. to J. F. Cawley, and held by her under the trust aforesaid. These collections proved fruitless; some of the accounts were assigned over to different parties. The result was that a long bill of costs was incurred, for which the respondents commenced suit, seeking to charge the wife's estate. The cause was referred to Judge MITCHELL, who made a report in favor of the plaintiff below. The wife appealed, and the judgment was reversed, and a new trial granted. (*See* 36 *Barb.* 52.) A new trial was had, before the same referee. On the trial before him, the defendant moved for a dismissal of the complaint, on the following grounds, viz: 1. The separate estate of Mrs. Cawley was evidently, under the proofs, not a trust estate vested in trustees, but was an estate, real and personal, of a married woman, standing in her name. If so, until it be shown that the marriage of

Mrs. Cawley with her husband took place after the enabling acts of 1848 and 1849, those statutes would not invest her with any power over her personal estate. 2. Conceding that the acts of 1848 and 1849 gave her the power of disposition, yet, as all these matters took place prior to the passage of the act of 1860, which, for the first time, gave a married woman the power to act as a sole trader, Mrs. Cawley had no power to make contracts, or to enter into bargains of employment of the plaintiffs below, binding her in any shape or form whatever. She had no power to conduct the business as a sole trader and make bargains of the kind sued for, nor to invest her husband with any power to act as her attorney in the transaction of any such business—*i. e.* prior to the act of 1860. 3. The husband, S. B. Cawley, was alone responsible for the plaintiffs' claim (if any one.) The business, though conducted in the wife's name, was the husband's business. 4. If Mrs. Cawley's estate could be considered a separate trust estate, she could only hold it by having it invested in the name of trustees who alone could charge it. It would require at any rate an express appointment on the part of Mrs. Cawley to charge it. 5. Considering Mrs. Cawley's estate be such as she could charge by her contracts, yet, (1.) No evidence was given of any employment by her. (2.) The husband could not take a power of attorney and charge her estate. (3.) Here the prayer for relief is to put her real estate in the hands of a receiver, whereas the statute says she can only dispose of her real estate by a deed or mortgage, acknowledged before a commissioner of deeds, separate and apart from her husband. 6. The plaintiff has not made out a case on the merits to any relief; what he has proven he is entitled to will be overpaid by the amount he has already received. 7. Also, upon the further grounds that, as the general term had decided the plaintiff had no right to recover on the original case made out, the referee now must dismiss his complaint. The referee denied the motion, holding: (1.) That a husband

may act as agent for his wife. (2.) That a married woman, holding separate property (as choses in actions) acquired since 1848 and 1849, may employ an attorney to prosecute them, and, if she does so, her separate estate is liable to the attorneys for services, unless a special agreement to the contrary be shown. (3.) That such is the law, even if the action prosecuted is unsuccessful, if there be no laches in the attorney. The referee made a report by which he found the following matters of fact, viz: That the plaintiff actually rendered all the services mentioned in the complaint, and that those services were worth the sum mentioned in the complaint, except that for the items for which the half of $60 is charged, there should be charged the half of $30 only, making a deduction of $15. That the other facts alleged in the complaint were also true, except that in addition to the sum of $59.50 paid to the plaintiffs by said Jane F. Cawley through her husband, as her agent, there were also paid to the plaintiff, before the commencement of this action, by one Lane, two several sums of $15 each, and after the commencement of this action, another sum of $15, and making the net balance due to the plaintiff by the defendant Jane F. Cawley $61.25, on the 30th May, 1859, when this action was commenced. The referee specially found, as matter of fact, that all such services were rendered for the benefit of said Jane F. Cawley and of her separate estate, and under employment through her said husband, to whom she had intrusted the whole management of the business of her separate estate, having full confidence in his ability to act for her, and not restricting his authority in any way, but requesting him "to let law alone, *if possible*, and to do a cash business." That this request was not made known to the plaintiffs, or either of them, and the prosecution of each of the actions or proceedings, for which claims are here made, was expedient, in his opinion, there not being a prospect that they would be collected without suit. He found, however, as matter of law, that such a request to a general agent left

an implied authority to him to sue when it might be expedient, and that, as far as other parties were concerned, he was to judge of the expediency. He also found, as matters of fact, that there was no such special agreement as alleged on the part of the defendants, and that the action brought in the name of Goldthwaite, Curtain & Thursby was so brought for the benefit of said Jane F. Cawley and of her separate estate, and by direction of her husband as her agent as aforesaid. That all of the claims in the plaintiffs' bill of particulars, except in the case of Curtain *v.* Lingham, arose out of sales of goods belonging to said Jane F. Cawley's separate estate, and sold by her husband as her agent. The case of Curtain v. Lingham arose out of a sale of goods to Lingham by J. C. Slaight & Co., in which J. C. Slaight and said Samuel B. Cawley were partners, and which claim, among others, said J. C. Slaight, with the approbation of said Samuel B. Cawley, on 5th January, 1857, absolutely assigned to said Jane F. Cawley, together with the goods in the store, with all the moneys due or to become due, and all the accounts, notes, &c. belonging to the said firm of J. C. Slaight & Co., with full power to her to collect the same. That the goods so assigned to Mrs. Cawley were those with which she commenced and carried on the business of a ship chandler, as a part of her separate estate. She had previously held a mortgage on the same goods. The referee also found, as matter of law, that services of a lawyer, duly retained in prosecuting suits for a separate estate, are to be deemed for the benefit of that estate, although the suit should be unsuccessful. That the meaning of "services rendered" for the benefit of the estate of a married woman, is such service rendered for the purpose of benefiting the estate. And that under these circumstances, the separate estate of the said Jane F. Cawley was liable for said sum of $61.25, with interest from 30th May, 1859, and the costs of this suit, and that judgment should be entered for said sum in favor of the plaintiffs, against said separate estate, as the same is set forth in the complaint,

according to the prayer of the complaint. And he directed judgment to be entered accordingly. From the judgment so entered, the defendant, Jane F. Cawley, appealed.

*D. McMahon*, for the appellant. I. The separate estate of Jane F. Cawley, which was sought to be charged by the plaintiffs below for their claim was not a trust estate. (*a*) The complaint alleged that the said Jane F. Cawley was possessed, in her own right, separate from her husband, of real and personal property, and of a store of goods in the ship chandlery business, in which said J. F. Cawley had been trading for some time anterior to 1st January, 1858. That her husband, Samuel B. Cawley, carried on the said business as her agent, and controlled and managed the same in all its details. The answer admitted these allegations to be true. The effect of which admissions were, in legal effect, under the authority of *Sherman* v. *Elder*, (24 *N. Y. Rep.* 381,) to establish the business to be the husband's and its avails to be his. (*b*) No trust deed is given in evidence, showing that the appellant, Jane F. Cawley, held her estate as *cestui que trust*, or that it was vested in trustees. (*c*) It appeared by the proof that the so called separate estate of J. F. Cawley was, originally, the Harlem lots and the Flushing rail road bonds, owned by her, and which were conveyed, as appears by the foregoing statement, to M. T. Runyon in exchange for the stock of goods used in the business of J. C. Slaight & Co., of which her husband was a partner, on which stock of goods she took a mortgage ; and in place of the mortgage she took the stock for it, and before the act of 1860, viz. in 1857, 1858, 1859, with the stock and its accumulations, carried on business in her own name. The husband doing the business ostensibly as agent for the wife, but really entirely controlling and directing it ; the family supported out of its avails and profits, and the accounts sued on being a portion of the increase of the business. Which proof did not in any sense counteract the effect of the pleadings, but explained the same.

(*d*) It further appeared that Jane F. Cawley and Samuel B. Cawley intermarried in 1846.

II. Whether we take the pleadings or the proof, it is established that such was the nature of Jane F. Cawley's estate. Then the report of the referee is erroneous and should be reversed, because 1. It was shown before the referee that the marriage of the appellants took place before the enabling acts of 1848 and 1849, viz. in 1846 ; consequently, those statutes would not invest Mrs. Cawley with any power over her personal estate. (*Holmes* v. *Holmes,* 4 *Barb.* 295. *White* v. *White,* 5 *id.* 474. *Westervelt* v. *Gregg,* 2 *Kernan,* 202.) 2. Were it conceded that the enabling acts of 1848 and 1849 gave the power of disposition to Mrs. Cawley of her realty and personalty, yet they gave no power to her to make contracts or enter into bargains of employment of the plaintiffs below, binding her or her estate in any shape or form whatever. (*Gates* v. *Brower,* 5 *Seld.* 205. *Van Steenburgh* v. *Hoffman,* 15 *Barb.* 28. *Switzer* v. *Valentine,* 4 *Duer,* 96. *Yale* v. *Dederer,* 18 *N. Y. Rep.* 265. *Hauptman* v. *Catlin,* 1 *E. D. Smith,* 729.) 3. Nor do the enabling acts of 1848 and 1849 give any power to any married woman to act as a sole trader and conduct a mercantile business in her own name, (*Freeman* v. *Orser,* 5 *Duer,* 476,) nor to invest her husband with power to act as her attorney in the transaction of any such business. (*Oulds* v. *Sansom,* 3 *Taunt.* 251. *Birdseye* v. *Flint,* 3 *Barb.* 500, 510. *Hunt* v. *Johnson,* 19 *N. Y. Rep.* 279.) All those matters remained as they were, at common law, until the act of 1860, (*Laws of* 1860, *p.* 157,) which, for the first time gave married women authority to act as sole traders, except in the cases specified at common law. As all the transactions here occurred before the act of 1860, the latter would not apply. (*See Lovett* v. *Robinson,* 7 *How. Pr. Rep.* 107.)

III. If, then, the husband, Samuel B. Cawley, was conducting the business in the name of his wife, and as her agent, still the wife had no authority to make bargains in person or

by agent, or to act as sole trader, before 1860 ; and the husband was conducting a business on the capital of his wife, the contracts in respect to which were his contracts and not those of his wife ; the increase of the business, and its profits, and the debts accruing thereout, were his property, and unless a portion of it could be designated and proven to be the wife's distinct and original capital, the same was wholly and entirely the husband's. (*Sherman* v. *Elder*, 24 *N. Y. Rep.* 381.) The referee, therefore erred in rendering judgment against J. F. Cawley's separate estate for the claim in question, but should have dismissed the complaint.

IV. The referee fell into the error of considering Mrs. Cawley's estate as an estate held by virtue of a trust ; and that, in equity, she had power to charge that estate for the expense of services rendered for its benefit. The only facts in the case to prove such a trust estate, are 1st. The admissions in pleadings above referred to ; 2d. The admissions in fol. 53 of the original testimony, which went merely to show that the wife engaged in the ship chandlery business, and that the husband carried it on as her agent. Yet, if it be conceded that the separate estate was a trust estate, then only the valid estate *could be one vested in trustees*, since the revised statutes, who alone could charge it. (*Noyes* v. *Blakeman*, 3 *Sandf. S. C. Rep.* 540, 541.) The beneficiary, Mrs. Cawley, could not create any lien on her trust estate, by any contract, means or process whatever. (*L'Amoureaux* v. *Van Rensselaer*, 1 *Barb. Ch.* 38.) In *Noyes* v. *Blakeman*, (3 *Sandf. S. C. Rep.* 542,) the superior court, at general term, rejected a portion of the claims of Mr. Noyes for counsel services, rendered on the employment of a married woman and her husband, without the intervention of her trustee, and those services which were rendered on the employment of the trustee were allowed. She certainly could not affect her separate estate without an express appointment indicating such intention. . (*Vanderheyden* v. *Mallory*, 1 *Comst.* 452. *Rogers* v. *Ludlow*, 3 *Sandf. Ch.* 104.)

Owen *v.* Cawley.

V. Even were it claimed that Mrs. Cawley's estate was such that she could charge it by her contracts, yet the report ought to be reversed, because, 1. No evidence was given of any employment *by her personally*, of the plaintiffs below. This she expressly denies. 2. And a husband cannot take a power of attorney from his wife, and thereby charge her separate estate. (*Birdseye* v. *Flint*, 3 *Barb.* 500.) 3. Where a woman owns real estate, the title of which is vested in her, the only way she can charge it is by a deed or mortgage, acknowledged by her before a commissioner, separate and apart from her husband, and she must state that it is done through no fear or compulsion of her husband; yet the decree in this case is that all her estate, including a lot in Queens county, must go to the hands of the receiver, thus being a judicial disposition of her estate on her mere contracts. (*Knowles* v. *McCamly*, 10 *Paige*, 342. *Ackert* v. *Pultz*, 7 *Barb.* 386. *Close of opinion of Ingraham, J. on the former appeal in this case*, 36 *Barb.* 54.)

VI. The referee erred in refusing to dismiss the complaint on the grounds stated. 1st. As to the six grounds firstly stated, see previous points. 2. On the 7th and last ground, we urge that the general term on the precise evidence on which the plaintiffs on this the second trial rested, held that the plaintiff's judgment must be reversed, and that he is not entitled to recover, so that it was the duty of the referee, on this trial, to have nonsuited the plaintiffs.

VII. The report was against evidence.

*Amos G. Hull*, for the respondents. I. The complaint could not be dismissed on any of the grounds assigned. 1. The statutes of 1848 and 1849 gave to women *then* married, the title to property thereafter acquired by them. (*Laws of* 1848, 308, *ch.* 200, § 2. *Kelly* v. *McCarthy*, 3 *Brad.* 7.) 2. A married woman had power before those acts, to bind her separate estate by contract. (*Jaques* v. *Meth. Ep. Church*, 17 *John.* 548. *Dyett* v. *N. Amer. Coal Co.*, 20 *Wend.* 570.)

Ownership implies the power of disposition in the usual modes. (*Sherman* v. *Elder*, 24 *N. Y. Rep.* 384. *Wynehamer* v. *People*, 13 *id.* 396. *Power* v. *Lester*, 23 *id.* 529. *Yale* v. *Dederer*, 18 *id.* 272, 284.) 3. No change was made in this respect by the acts of 1848 and 1849. Married women could dispose of and charge their estates as freely under those acts as they could do with their equitable estates before. (*Yale* v. *Dederer*, 18 *N. Y. Rep.* 272.) (4.) The business is admitted to have been the wife's. And whether she could legally carry on a business or not, it is certain she appropriated its profits and authorized her husband to represent it to the world as hers. And having thus induced the plaintiffs to give credit to her on that basis, she is estopped from denying her title to the claims on which the plaintiffs brought suit. (*Plumb* v. *Cattaraugus Ins. Co.*, 18 *N. Y. Rep.* 394. *Dezell* v. *Odell*, 3 *Hill*, 215. *Pickard* v. *Sears*, 6 *Ad. & Ell.* 475. *Breidert* v. *Vincent*, 1 *E. D. Smith*, 542. *Brewster* v. *Baker*, 16 *Barb.* 613. *Hibbard* v. *Stuart*, 1 *Hilt.* 207. *Thompson* v. *Blanchard*, 4 *N. Y. Rep.* 303.) A married woman is as much bound by an equitable estoppel as a single woman, especially as *for all* purposes connected with her separate estate, she is deemed a *feme sole*. (*See Power* v. *Lester*, 23 *N. Y. Rep.* 529.) 5. The question whether or not Mrs. Cawley could carry on a business is entirely immaterial. The claims upon which the plaintiffs sued for her, were either directly assigned to her by Slaight, or arose from the sale of goods assigned to her by him. Clearly she had power to sell these goods and to collect the price; and also to collect the claims assigned to her by Slaight. For this purpose she could employ a lawyer. Even if the claims belonged to her husband, he could give them to her, and no one but his creditors could impeach the transaction. 6. The fourth ground is clearly frivolous. 7. The fifth ground is frivolous. Evidence was given, moreover, by the defendant herself, to show her employment of her husband as agent. And the relief prayed has always been granted, notwithstanding the same

Owen *v.* Cawley.

objection here raised as to the necessary formalities of a charge on the estate must always have existed. No such formalities were resorted to in the case of Mrs. Dyett, who was held liable by the court of errors, (20 *Wend.* 570.) Indeed, this precise objection was raised in *Noyes* v. *Blakeman,* (2 *Seld.* 574,) and disregarded by the court of appeals. 8. It is objected that the husband could not act as his wife's agent. The cases cited to support this position, (*Birdseye* v. *Flint,* 3 *Barb.* 500; *Oulds* v. *Sansome,* 3 *Taunt.* 251,) are cases arising at common law, in which it was held that *at law* a married woman could not appoint any agent, (*see* 3 *Barb.* 510;) but it was conceded in the same breath that in equity she could do so, and that a claim thus arising could be enforced by an equitable action. In our courts, law and equity are intermingled, (*Code,* § 69,) and in every action the principles of equity are to be applied, whether the action is a legal one or not. (*New York Central Ins. Co.* v. *Nat. Pro. Ins. Co.,* 14 *N. Y. Rep.* 90, 91. *Phillips* v. *Gorham,* 17 *id.* 270.) How much more in this action, which is purely an equitable one. 9. The judges at the general term did not agree in the reasons for their decision, (13 *Abb. Pr. Rep.* 13,) and the referee was not bound to dismiss the complaint on this ground.

II. The finding made the subject of the defendant's 4th exception, wherein he holds as matter of law that the defendant S. B. Cawley, as *agent* for his wife, was invested with authority by her to bind her separate estate for the plaintiffs' demands in suit, and that she did not restrict said authority, is clearly correct, taking the evidence of Mrs. Cawley herself as uncontradicted. She says she gave him authority to act *as he saw fit,* and did *not restrict his authority in any way;* and though she tried to qualify this evidently truthful statement, yet she dared not say more than that she *wished* (not ordered) him to keep out of law, *if he could avoid it.* She proves that her husband was her general agent, having unrestricted control of all her property, and that she left every thing to him, and gave herself no trouble about the business.

Even therefore if she had forbidden him to sue, yet the plaintiffs having acted upon the faith of his general authority, she was clearly liable to them. (*Johnson* v. *Jones*, 4 *Barb.* 369, 373. *Dingle* v. *Hare*, 7 *C. B.*, *N. S.*, 159. *See Farmers and Mechanics' Bank* v. *Butchers and Drovers' Bank*, 16 *N. Y. Rep.* 125; 14 *id.* 623; *North River Bank* v. *Aymar*, 3 *Hill*, 262; *Tradesmen's Bank* v. *Astor*, 11 *Wend.* 87.)

III. The eighth exception to the referee's findings, that the unsuccessful services of a lawyer, rendered in behalf of a married woman's separate estate, are beneficial thereto, and a charge upon the same, is untenable. 1. The referee justly found that the services of a lawyer, rendered in good faith, are, even if unsuccessful, for the benefit of his client's estate. 2. The failure of the plaintiffs to succeed arose from the inherent defects of their client's cases. They rendered her all the service they ever could. They saved her the time and labor involved in prosecuting the causes, and thus enabled her to devote all her time to the improvement of her estate. In this manner, at any rate, their services were *directly* beneficial to her and her estate. 3. Moreover, these services were but part of a long series rendered by the plaintiffs, in part of which they were successful. Can a client, even if a married woman, be permitted to take the benefit of the successful services, and to separate them from the others, and to refuse to pay for the latter? 4. And finally, these very claims sued upon, constituted *part of her separate estate,* (*Dillaye* v. *Parks*, 31 *Barb.* 132,) and the whole estate is liable for a service rendered on behalf of a part.

IV. The decision in *Yale* v. *Dederer* is not so broad as it is claimed to be by the defendants. On the first appeal, the court said that the debt must be for the benefit of the estate *or of the wife herself.* (18 *N. Y. Rep.* 276, 285.) On the subsequent appeal, it being quite clear that the debt in suit was for the benefit of neither, Judge Selden was less guarded in his language. But his general expressions must be con-

strued in the light of the facts before the court. A decision, in that case, that a debt contracted for the personal benefit of the wife, would not charge her estate, would have been a mere *dictum*, as the question was not raised, and the contrary rule is well established. (*Gardner* v. *Gardner*, 22 *Wend.* 528.)

V. The exceptions to the findings of fact cannot be sustained. There is abundant evidence in the case to justify the findings of the referee; and even if there was a conflict of evidence, the decision of the referee should not be disturbed. (*Sinclair* v. *Tallmadge*, 35 *Barb*, 602. *Roberts* v. *Carter*, 28 *id.* 462. *Murfey* v. *Brace*, 23 *id.* 561. *Foster* v. *Coleman*, 1 *E. D. Smith*, 85. *Cady* v. *Allen*, 22 *Barb.* 388. *Thompson* v. *Wood*, 1 *Hilt.* 93. *Davis* v. *McCready*, 4 *E. D. Smith*, 565. *Brooks* v. *Christopher*, 5 *Duer*, 216.) This is undoubtedly the true rule where, as in this case, the conflicting evidence is that of the interested parties themselves. (*Roberts* v. *Gee*, 15 *Barb.* 449.)

*By the Court*, SUTHERLAND, J. I think it very clear that the defendant, Samuel B. Cawley, could act as agent for his wife. The referee, in substance and effect, found that Jane F. Cawley authorized her husband to employ the plaintiffs. There was certainly evidence tending to show that she did; and I do not see upon what principle the judgment can be reversed on the ground that this finding of fact was erroneous. The Harlem lots and rail road bonds with which Runyon's stock in trade was bought for Slaight were Mrs. Cawley's separate property and estate. To secure her, Slaight executed a mortgage to her on the stock in trade. She subsequently received the stock in trade, notes, accounts &c. of Slaight & Co., in satisfaction of her mortgage, and carried on the business in her own name. The plaintiffs, as attorneys, were employed by her husband to collect some of the accounts of Slaight & Co., assigned to her, and also some debts or claims arising out of the business after she carried

it on.   In some, if not all of the suits brought by the plain-
tiffs, they were unsuccessful; that is, they did not succeed in
collecting the claims.

This action was brought to recover for services rendered
by the plaintiffs, as attorneys and counsellors, under such
circumstances; and the question is whether the separate es-
tate of the defendant, Jane F. Cawley, is liable for the sum
found by the referee due to the plaintiffs.   The referee
having found, as matter of fact, that Samuel B. Cawley, in
employing the plaintiffs, acted as the authorized agent of his
wife, I think her separate estate is liable.   The referee finds
that the services rendered by the plaintiffs were rendered for
the benefit of Jane F. Cawley, and of her separate estate.
I think this finding right, and authorized, if the finding of
the referee, upon the question of the employment of the
plaintiffs by Mrs. Cawley, through her husband, was right,
and I have said I do not see how we can disturb the find-
ing of the referee on that point.   The suits and proceedings
instituted by the plaintiffs were instituted for the purpose of
collecting demands belonging to Mrs. Cawley, and thus in-
creasing or adding money to her separate estate, and so
benefiting her separate estate.   It seems to me that the fact
that the suits and proceedings, or some of them, were unsuc-
cessful, is not of controlling importance on the question of
the liability of her separate estate.   The suits and proceed-
ings were instituted for the purpose of benefiting her sepa-
rate estate.   Moreover I am not willing to concede that the
liability of the separate estate of a married woman for debts
contracted by her is limited to cases where she has by con-
tract expressly declared her intention to charge it, or where
the consideration of the indebtedness was obtained for the
direct benefit of the estate itself.

In *Yale* v. *Dederer*, (18 *N. Y. Rep.* 275, 276,) Judge
Comstock says: "The principle, in short, which now governs
in cases of this kind is, that a wife's separate estate is liable
to pay her debts during coverture, in whatever form they are

---

In the matter of Kerr

---

incurred, not because her contracts have any validity at law, nor by way of appointment, or charge, but because equity decrees it to be just that they should be paid out of her estate."

If a married woman, with a separate estate producing an annual income of $20,000 or $30,000, should buy on credit diamonds or laces to the amount of $5,000, it would be difficult to say that the diamonds or laces were bought or obtained for the benefit of her separate estate, whether real or personal, or both; but I think equity would decree it to be just that the debt should be paid out of such separate estate, even in the absence of anything to show her intention to charge her separate estate with the payment of it, except the mere fact of purchasing the diamonds or laces on credit. On the main question, therefore, in the principal case, I think the referee came to the right conclusion.

I have examined the numerous technical exceptions taken on the part of the defendants in every stage of the trial, and do not find any which require a particular notice, or which in my opinion should reverse the judgment.

The judgment should be affirmed with costs.

[NEW YORK GENERAL TERM, May 2, 1864. *Leonard, Clerke* and *Sutherland,* Justices.]