## NEW YORK COMMON PLEAS.

HUGH MEEHAN, respondent agt. GEORGE E. WILLIAMS and others, appellants.

A conveyance of premises made in fraud of a *mechanics'* *lien* will have no effect to bar or preclude the foreclosure of such lien, although the notice of lien is filed subsequent to such conveyance, but within the statutory limit.

The *time of performance* of the work stated in a building contract in writing, under seal, may be extended or waived by parol. And such extension or waiver need not be established by positive testimony; it may be inferred from circumstances.

An appellate tribunal will not be justified in assuming anything not clearly deducible from the evidence which is before it, and should not be unmindful of the consideration that the evidence is rarely, if ever, brought before it in as perfect a form as it was received.

*General Term, August,* 1868.

*Before all the Judges.*

APPEAL from judgment entered upon the report of a referee.

ALEXANDER H. REAVEY, *for appellants.*

CHARLES A. RAPALLO, *for respondent.*

*By the court*, DALY, F. J. The evidence fully justified the finding of the referee that the conveyance of the premises to John A. Williams was not *bona fide*, but was made with intent to defraud the plaintiff and defeat his lien. The plaintiff had a right to impeach its validity in this action. He had an incipient lien when this transfer was made, which became absolute under the act of May 5, 1863, when the notice was filed with the county clerk. The act of 1863 provides that incumbrancers may be made parties in the action or proceeding to enforce the lien. John A. Williams, to whom this fraudulent conveyance was made, comes under the denomination of an incumbrancer, and, as such, was made a party; and the plaintiff having established in the action that he was a creditor of the fraudulent grantor to the extent of $863, was entitled to have this conveyance declared void, so far as it interposed any obstacle to the enforcement of his lien. (2 *R. S.* 137, § 1, *Clute* agt. *Fitch*, 25 *Barb.* 432; *Van Etten* agt. *Hurst*, 6 *Hill*, 311.) The act of 1863 declares that the court may determine the rights of all the parties, and that such judgment or decree shall be made as to the rights and equities of the several parties *among themselves*, and as against any owner, as may be just. (§§ 2, 5, 7.) This is ample to confer upon the court in this action the power to give relief against this conveyance, and to declare it, as against the rights of the plaintiff, to be fraudulent and void; and the conveyance having been adjudged to be fraudulent and void, it becomes necessary to consider whether there is anything in the objection raised to the constitutionality of the provision in the act of 1863 which declares that the lien shall become absolute, notwithstanding any sale, transfer or incumbrance made after the commencement of the work or the furnishing of the materials.

The plaintiff testified that he could have completed the work by the 15th of February, but for a delay arising from the impossibility of plastering, on account of the weather. Several of the defendants' witnesses testified that the delay

in the plastering could have been avoided by putting up stoves in the building and keeping up fires to dry the walls; and Williams and his wife swore that the plaintiff said to them that he would do so. This the plaintiff denied, and gave a very different version of what passed between him and Mr. and Mrs. Williams upon the subject, while one of his witnesses, a plasterer, testified that fires will not have much effect in drying walls.

The evidence upon this head being conflicting, we must assume that the referee found that the testimony on the part of the plaintiff was the most reliable; and the testimony was to the effect that both Williams and Mrs. Williams assented to the delay. The plaintiff swore that he told Williams that it was impossible to do the plastering, on account of the weather; that, if he insisted on having it done, it would tumble when a thaw came; and that Williams answered that he did not want it to tumble on him. In which connection it may be remarked that the plaintiff swore that Williams told him, when he ordered the extra work to be done, that he owned the premises, and that Williams never told him at any time that his wife was the owner of the property. The plaintiff testified further that he told Williams that he, the plaintiff, would be obliged to wait until the weather would permit; and that Williams replied that the weather might change, and he must get at it as quick as he could, making no objection to the delay. When further interrogated upon this point, the plaintiff stated that there were two carpenters present, whom he named, when this conversation occurred, and that Williams said that he wanted the plaintiff to get on as *soon as he could,* and that Mrs. W. said she did not want to move into the house before it was properly dry. We have here the fact that neither he nor she made any objection to the delay, and in addition, a much more important circumstance, in respect to which there was no conflict, that is, that Williams, in the presence of his wife, paid the plaintiff the fourth installment, *ten days*

*after the time limited in the contract* for the completion of the building. Williams swore that he never agreed with the plaintiff to extend the time; that his wife never authorized him to do so, or to modify the contract; and her affidavit was read to the same effect. But this was rather swearing to a conclusion than controverting the specific testimony from which a different inference was drawn. He did swear that he did not tell the plaintiff that, if the work could not be done in cold weather he did not want him to do it; but this was contradicting what was sworn to by the plaintiff, and the referee believed the plaintiff.

The evidence was ample to warrant the referee in finding that Williams acted throughout in the whole matter of the erection of the building as his wife's agent, and by her authority, so as to make all that he did binding upon her. From the peculiar relations of the parties, that of man and wife, evidence by no means as conclusive as that which was given in this case would have been sufficient to show that such was the fact. According to his own statement, he had worked as a practical builder; he had put up buildings for nine or ten years; he had a knowledge of and was familiar with masons' and carpenters' work. He was about the premises generally every other day, superintending and directing the work, and carefully examined at times, according to his own statement, the manner in which it was done and the quality of the materials furnished. He ordered changes to be made and extra work to be done, and the bill for the extra work was given to him. He signed the contract for the erection of the building; and when the plaintiff wanted Mrs. Williams to sign it, Williams, according to the plaintiff's statement, did not seem to want her to. He made four payments to the plaintiff, in his wife's presence. She never gave any directions to the plaintiff to make any changes; but many changes were directed to be made by Williams, some of them involving extra work, for which he paid. And the plaintiff testified that what he meant by Wil-

liams having the superintendence of the work was, that it had to be done to suit him. Mrs. W. was once at the building while the plaintiff was there; and all that he ever had to do with her respecting it was when she told him she did not want to move into a damp house. When the plaintiff called at Williams' house for the last two payments, he saw Mrs. W., who told him that her husband was out, that he would soon be in and pay him, as he had the money; and the written notice to stop the work was given to the plaintiff by Williams, who said that he had sold the house; that the plaintiff had no liens against it, and that he must get his money the best way he could. No other conclusion could be arrived at upon this evidence but that Williams was acting throughout in place of his wife, as her agent, and by her authority; that there was an understanding between them that everything relating to the matter should be intrusted to him; that he, and not she, was to judge whether the work conformed to the contract; that he was clothed with authority to make or permit any alterations or changes he thought proper; to order extra work, if he deemed it advisable, and to do everything which she could or might do, either as one of the parties to the contract or as the owner of the premises, or as to one for whose exclusive benefit the building was erected, and that his acts were to be binding upon her. (*Colvin* agt. *Currier*, 22 *Barb*. 373; *Owen* agt. *Cawley*, 42 *Barb*. 105.)

Many of the variations were made by his express directions. This we must assume that the referee found wherever the testimony of Williams was in conflict with that of the plaintiff. The plaintiff denied that he made any other variations; and if the fact were otherwise, they were made under the eye of the husband, without any objection on his part, at the time he was superintending the erection, as the agent of his wife, and being, as proved by himself, an expert. The referee was therefore justified in concluding that, if made, they were made with his concurrence, and that after they

were made there was an acceptance of the work up to the time of the payment of the fourth installment. (*Sinclair* agt. *Tallmadge*, 35 *Barb.* 605.) Williams testified that he discovered the variances or defects while the work was going on, and as he made no remonstrance or objection at the time—for the plaintiff testified that he made no objections whatever—it must be assumed that he regarded them as immaterial and waived them, as an architect or other expert, similarly employed, might have done on behalf of his principal. That he did so is to be inferred not only from the fact that he knew of them and made no objection, but from the fact that he afterwards promised to pay the plaintiff the fifth installment *as soon as certain mouldings should be put on*, showing that that was all that he considered essential to entitle the plaintiff to the payment of the fifth installment. This was very conclusive, and fully justified the referee in finding that he had, in his capacity as an expert, waived all such defects and variances as immaterial; that, as many changes or alterations had been made by his express directioes, he considered the work up to that time, with the single exception stated, as a substantial compliance with the contract. The referee was clearly right in holding that all such variances and defects were waived, and in inferring from the circumstances that Mrs. Williams, and her husband acting as her agent, assented to an extension of the time beyond the strict letter of the contradt. (*Smith* agt. *Gugerty*, 4 *Barb.* 614; *Flynn* agt. *McKeon*, 6 *Duer*, 203; *Lawrence* agt. *Dale*, 3 *John. Ch.* 23.)

On the 16th of March, 1865, Mrs. Williams made the fraudulent conveyance of the premises to John A. Williams, and on the 23d of the same month she and her husband gave a written notice to the plaintiff directing him to discontinue the work, accompanied by the declaration of Geo. E. Williams to the plaintiff, before referred to. This notice advised the plaintiff that others would be employed to complete the building, that the cost thereof would be charged to his

account, and that the parties, Williams and his wife, would claim damages from him for the non-performance of the contract, as they had been kept out of the occupancy of the building and prevented from letting it. This notice did not purport to have been given under the provision in the contract which gave the parties, if the plaintiff should neglect to·supply a sufficiency of materials and workmen, the power to provide both and finish the building, upon giving him three days notice in writing, the expense to be deducted from the amount of his contract; and if it had been, there was no proof that he had neglected to supply a sufficiency of workmen or of materials, but, on the contrary, evidence that he was amply supplied with both. The notice, in fact, by its express terms, was upon the ground that the plaintiff had failed to complete the building by the 15th of February, 1865; and as the parties had, as the referee has found, assented to an extension of the time beyond that period, they had no right on the 23d of March to put an end to the contract upon any such ground. As the plaintiff, however, was directed to discontinue the work on the contract, he did so, and was at least entitled to recover what the referee awarded to him, the fifth installment of $400, he having done all the work and furnished the materials, entitling him to the payment; $400 as the value of the portion of the work done and of the materials furnished under the sixth and seventh installments, and $63 for extra work; in all $843.

The questions put as to the value of the work done and the materials furnished up to the time when the plaintiff left the building, the amount of money paid by him for materials and labor from the time he commenced, what was the value of all the work done by him and of all the materials he furnished, were properly excluded. The information they sought to elicit was immaterial and could have no bearing on the measure of damages, which was the contract price, where the installment was due, and the value of the materials furnished and of the work which had been performed

beyond that when the progress of the work was arrested by the order of the owner and her agent, before the plaintiff could complete it to the point which would have entitled him to the sixth and seventh payments.

Williams and his wife having assented to the delay occasioned by the impossibility of plastering from the cold weather and hard freezing, the plaintiff was bound to complete the building within a reasonable time after change in the weather allowed him to resume the plastering. (*Green agt. Harris*, 1 *Hilt.* 234.)

By the terms of the contract, the building was to be completed in three months and six days. When the notice to stop the work was given, four months and seventeen days had elapsed, and the work was not then sufficiently completen to entitle the plaintiff to the said installment. One witness testified that with a sufficient force of men such a building could be erected and all completed in three months, and another witness said that, if prosecuted properly and with a sufficient force, four months would be ample, and when asked if it could be done in less, he said that it requires more time in winter, there being more delay in that season on the outside work; and it was shown that $1,830 was paid for completing the building, which was $765 more than the amount of the sixth and seventh installments, and that it was not finished until the 1st of May following. I entertain great doubt, from these facts, whether the plointiff proceeded with the work with that diligence which the law requires; yet the evidence is not sufficiently definite to enable us to say positively that the referee erred. There was the positive statement of the plaintiff that he eould have finished it by the 15th of February, if the delay in the plastering had not occurred, and that delay may have been very much prolonged by a winter of protracted duration or of great severity, and it was in proof that the weather was very severe. An appellate tribunal would not be justified in assuming anything not clearly deducible from the evidence which is before it, and should

not be unmindful of the consideration that the evidence is rarely, if ever, brought before it in as perfect a form as it was received. We must assume that the referee concluded that the plaintiff would and could have completed the building, under the circumstances, within a reasonable time, if he had not been ordered to discontinue the work. I say we must assume this, as there is no finding upon the point, the twenty-third request of the defendants not being specific enough to embrace it; and we cannot say positively upon the evidence that he erred in so concluding.

In respect to the claim to recoup damages tor variances in the work, it is sufficient to say that the evidence was conflicting as to the quality of the work and materials, and as to omissions or variances from the contract by the plaintiff, and that the finding of the referee upon that head cannot be reviewed. The conflict did not arise, as suggested, upon the testimony of the plaintiff alone, but he called several experts, each of whom were examined very fully as to the quality of the different materials, and specifically as to the different parts of the workmanship, who united in declaring that both the materials and the workmanship were good, in all respects as good as is usual in houses of the same description.

The sub-contractors, Hargrove and Clare, averred that they agreed with the plaintiff to do the plastering work in and about the premises described in the complaint; that they completed the same as far as it was possible, when they were prevented from completing it by the defendants, Geo. E. and Sarah I. R. Williams, and that what they did was worth $103; and this averment was not controverted by the plaintiff or by any of the defendants. They also proved upon the trial that they did the plastering work upon the building; and each of them was minutely examine￼ upon the trial as to the character of the work and the quality of the materials. The defendant Heavey averred that he put up the marble mantles, under an agreement with the plain-

tiff, and proved upon the trial that he put up four in the building, which were the same in every respect, as near as he could make them, as those in Mrs. Tucker's house, which, by the plaintiff's contract, was the pattern to be followed; that the parlor mantle was $45, and the other three $20 each. If the statement of the claims of these sub-contractors were defective, which I by no means concede, it would still make no difference, as the act of 1863 declares that this shall not impair or affect the rights of the claimants, but that they shall have relief according to their rights as they shall appear in evidence, and the evidence was amply sufficient to show that the work done and materials furnished by these sub-contractors was in pursuance of the contract made with the plaintiff for the erection of the building, and that is is all that is requisite under the act of 1863, which expressly provides (§ 1) for liens in favor of persons employed by a contractor or sub-contractor. The work done and materials furnished by them being admitted, and the value of their claims were properly found by the referee to be valid liens, prior in point of equity to that of the plaintiff.

The act of the 13th of April, 1855, declared that the judgment should direct the sale of the interest of the owner in the land and premises upon which the lien existed, to the extent of the right of the owner at the time of the filing of the notice; and this being a statutory provision, it had to be strictly followed. (*Hauptman* agt. *Catlin*, 20 *N. Y. R.* 247.) This act and all former acts are repealed by the act of 1863, section 12, except so far as it may be necessary to carry into effect liens acquired before the act of 1863 took effect. The lien here took effect under the act of 1863, and that act contains no such provisions as the one referred to in the act of 1855, but simply provides (§ 5) that judgment shall be rendered according to the equity and justice of the claims of the respective parties, and (§ 9) that it may be enforced by an execution, on which the property on which the lien is adjudged may be sold and the proceeds distributed

Meehan agt. Williams.

as ordered by such judgment. The lien becomes absolute to the extent of the right, title and interest which the owner had in the premises at the time when the notice was filed, which interest, according to the provisions of the act, cannot be directed by any sale or transfer made after the commencement of the work or furnishing of materials. No such sale or transfer exists in this case, the one which was made having been adjudged to have been fraudulent and void; and the decree therefore directs that the premises be sold under execution, and provides for the manner in which the proceeds shall be distributed, which is in strict conformity with the provisions of the act of 1863.

It remains but to consider the exceptions taken to the admission or to the rejection of testimony. Meehan was asked (*fol.* 122) if joints filled with putty would be good workmanship. No foundation had been laid for such a question; at least none is pointed out, and I have failed to find any. The referee therefore ruled correctly. The inquiry was immaterial. The question put to Meehan (*fol.* 100), whether he could have finished the work by the 15th of February, if the delay in the plastering had not occurred, was admissible, as bearing upon the point whether Williams and his wife had or had not assented to the delay, on the account. The questions put to Hargrove and Clare (*folios* 582, 725), as to the cost of hard finish, were immaterial; but the inquiry could in no way prejudice the other defendants, as the work done by Hargrove and Clare, and the value of it, was admitted. The referee awarded them only the amount claimed and sworn to in their answer, which was not controverted either by the plaintiff or by any of the defendants. The question (*folio* 473), whether the plaintiff had a quarrel with Roere, a real estate broker, and the answer to it, is too trivial for consideration. It could have no material bearing upon the result whether the question was admitted or rejected, and it was wholly immaterial what answer was or might have been returned to it. The hearing before the

referee covered a period of more than three months, and the. proceedings in the case embrace over nine hundred printed folios, and to send the case back for another trial, we should require something more grave than a trivial inquiry like this. (*Forrest* agt. *Forrest*, 25 *N. Y. R.* 510.)

The report of the referee should be affirmed.