By the Court:

Jones, J.
On the argument of this appeal I was strongly impressed with the view that the facts which, according to the first section of the mechanics’ lien law of 1863, give a lien, and the fact of notice having been filed pursuant to the requirements of section 6, must either exist in fact, or their existence be admitted by the defendants, either expressly or tacitly, to authorize any judgment under that law.
The case of Maltby v. Greene (1 Keys, 548), cited by appellant’s counsel, and the case of Freeman v. Cram (3 Const., 305), therein referred to, caused me at first to doubt the correctness of this view. But on a close examination of those cases, I think they cannot be regarded as binding decisions on the point, nor does the reasoning of the' learned judges who delivered the opinions carry with it the conviction that the view entertained by me in the argument is erroneous.
The case of Freeman v. Cram arose under the lien law of 1844, and was an appeal from the New York Common Pleas, *271 ■where judgment was rendered in favor of the defendant, on demurrer to pleas. The sole question presented was whether a mechanic’s lien, under the law of 1844, expired at the end of a year from the time of its commencement, or whether by obtaining judgment against the owner within the year the lien may be prolonged and enforced afterwards.
Section 3 of the act of 1844 provided, “ The lien so created by this act shall take effect from such filing and such service of said notice (referring to the provisions of section 2), and shall continue in full force for one year thereafter.”
The Court of Appeals held that the mechanic’s lien, being the creature of the statute, and its duration being limited thereby, the courts cannot extend or prolong it. This was all that was decided in the case.
It is true the learned Judge who delivered the opinion of the Court indulged in a train of reasoning tending to show that the proceedings to bring the defendants into court, and the judgment to be rendered therein, were not connected with the proceedings whereby the lien was to be acquired, but were wholly independent thereof. Thus, he says, “ the duty of the Court is simply to settle the amount of the claim and render judgment therefor. The Court is not required to adjudicate upon the validity of the lien or the time of its commencement. The judgment is to be rendered and enforced in all respects like a judgment in an action of assumpsit.”
Again, he says: “ The statute authorizes a summary proceeding to obtain a judgment for the amount due, by which, in most cases, if not in all, the mechanic’s lien may be enforced by execution and sale within the year; and if in some cases the owner should be able to delay the proceeding until the expiration of the lien, the answer is that the statute has not provided in these cases an effectual remedy.”
With all due respect to the opinion of the learned Judge, it seems to me that the question of the power of the Court to prolong the duration of the lien beyond the time limited by statute does not depend on the solution of the question whether or not *272 a compliance with the requisitions of section 2 is the foundation. of all subsequent proceedings (including therein the judgment) to be had under the act.
Whether it is or not, in either case the lien created under the second section would cease at the expiration of the statutory limit; but that would not affect the further prosecution of the proceedings founded thereon, if, as the learned Judge seems to think, a general judgment may be rendered against the defendant after the expiration of such lien; if, on the other hand, a general judgment cannot be rendered after the expiration of the mechanics’ lien, then it can only be said, in the language of the learned Judge, “the statute has not provided an adequate'remedy in cases where judgment or sale is delayed beyond the statutory limit.”
I think, therefore, all the remarks of the learned Judge tending to show that the creation of a lien pursuant to the requisitions of section 2 is not the foundation of the subsequent proceedings prescribed by the statute, are obiter.
The learned Judge assumes that “ the Court is not required to adjudicate on the validity of the lien or the time of its commencement.”
The second section of the act requires the person who desires to obtain a lien “ to draw up specifications of the work by him contracted to be performed, or materials to be furnished, and stating the price or prices agreed to be paid therefor, and shall file them, or, if there be a contract, a true copy thereof, if the same be in writing, in the office of the Clerk of the City or County of New York, and serve a notice thereof personally on such owner or his agent within twenty days after the making such contract, or commencing the performing of such labor, or the furnishing of said materials.”
“ Sec. 3. The lien so created shall take effect upon such filing and such service of said notice, and shall continue in full force for the space of one year thereafter; such lien may be discharged on said docket,” &c.
“ Sec. 4. Any owner, and any contractor or laborer, or any *273 .person furnishing materials in pursuance of any/contract made by such contractor with such owner or his said agent therefor, may, after such labor has been performed or materials furnished, enforce or bring to a close such lien, by serving a notice personally on such owner or his agent, contractor, laborer, or person furnishing materials, requiring him to appear in the Court of Common Pleas,” &c.
The act, then, prescribes the proceedings to be had after the service of this notice.
.Now let us reason back. What is this notice, which is to bring the parties into court, authorized for ? Why, “ to enforce or bring to a close such lien.” What lien ? Why, “ the lien so created.” How created 1 Why, by a compliance with the provisions of section 2.
It inevitably follows that the creation of lien, pursuant to the provisions of section 2, is the foundation of the proceedings to be commenced by the service of the notice prescribed by section 4.
Suppose a contractor or sub-contractor wholly omits to file any specifications or copy of contract, or to serve any notice of such 'filing; or suppose, having omitted to file any specifications or copy of contract, he gives notice to the owner of having filed them; or suppose he does file specifications or a copy of the contract, and wholly omits to give notice of such filing to the owner; or suppose he files specifications or a copy of the contract, and gives notice, to the owner thirty (instead of twenty) days after the malting of the contract, or commencing the performing of the labor, or the furnishing of the materials—can the proceedings, instituted by the service of the notice prescribed by section 4, be maintained in any one of these cases ? Is there any “ such lien” (sec. 4) “ so created ” (sec. 3), “ to be enforced or brought to a close by the service of a notice ” (sec. 4) ? Clearly not.
It obviously results that when a defendant, brought into court by the service of the notice required by section 4, raises the question that no valid lien has been created pursuant to section 2, it, so far from not being the duty of the court to inquire into the validity of the lien, becomesi the duty of the court so to *274 inquire, and if it determines that no valid lien has been created, to dismiss the proceedings.
But let us inquire how far the views expressed on this point by the learned Judge in the ease of Freeman v. Cram have con trolled the Court of Common Pleas, in which court that case was first decided, and its decision affirmed by the Court of Appeals, the opinion above commented on having been delivered in such affirmance.
In 1851 the legislature passed another mechanic’s lien law and repealed the act of 1844.
The first section of this act reads: “Any person who shall hereafter, by virtue | of any contract with the owner thereof or his agent, or any person who in pursuance of an agreement with any such contractor shall, in conformity with the terms of such contract, perform any labor or furnish materials in building, altering, or repairing any house or other building or appurtenances to any house or other building in the city and county of New York, shall, upon filing the notice prescribed in the sixth section hereof, have a lien,” &e.
The fourth section of this act provides: “Any contractor or laborer, or any person furnishing materials in pursuance of any contract made by such contractor with said owner or his said agent therefor, may, after such labor has been performed or materials furnished, enforce or bring to a close such lien by serving a notice personally on said owner or his agent, &c., requiring him to appear in the Court of Common Pleas,” &c.
There is no difference between this section and section four of the act of 1844, except that the time to appear is made twenty instead of ten days, and the provision contained in section four of the act of 1844, authorizing the owner to take proceedings to bring the lien to a close, is omitted.
This omission is, however, supplied by subdivisions three and •four of section eleven of the act of 1851. Section six of the act of 1851 provides: “ Within six months after the performance of such labor or the furnishing of such materials, the contractor, subcontractor, laborer, or person furnishing materials, shall serve a *275 notice in writing on the County Clerk,” and then prescribes the contents of such notice.
Section four of the act of 1851 does not refer to the lien to be obtained by complying with section six as that to be brought to a close by the notice prescribed by section four, more definitely and conclusively than does section four of the act of 1844 refer to the lien to be obtained by complying with section two of that act as that to be brought to a close by the notice prescribed by it.
Yet- we find the Court of Common Pleas, long after the report of the case in Freeman v. Cram was published, holding, under the act of 1851, that no lien is created unless the notice prescribed by section six is filed ; that if no lien is thus created, there is nothing to foreclose by the notice prescribed by section four; and that in such event (the point having been taken by the defendant, and sustained), proceedings commenced by a notice' under section four must be dismissed (Beals v. Congregation Bnai Jeshurun, 1 E. D. Smith, p. 654; Conkright v. Thomson, 1 E. D. Smith, p. 662).
In the case of Beals v. Congregation, &c., the point raised by the defendant was that the notice filed was defective, in not complying with the sixth section. The Court (per Judge Wood-ruff) held that it was defective. Plaintiff’s counsel then urged “ that defendant, having appeared in the proceedings to, foreclose by their proper name, have waived the defect, or, at all events, this Court can allow an amendment by which the imperfection can be ended.” But the Court said: “ The defendants have appeared, and set up this very defect as a ground of defence. They have been called into court to defend. They are rightly here. They are here to meet the plaintiff’s allegations, one of which is that he has done work, &c., for one Purss, for payment of which he has a lien on defendant’s building, and prays that that lien may be enforced. The defendants answer, ‘You have no such lieu. You have not taken the steps necessary to acquire one. The very foundation of your proceedings against us has failed.’ In this we think the defendants are right. There does not exist a state of things between these par *276 ties upon which the plaintiff is entitled to bring these defendants before the court for the purpose now in view.” Further' on the Court says: “Weare constrained to say that in this case ho lien, as against these defendants, has been acquired by the plaintiffs. He has, therefore, no claim against them to enforce.”
It is true that in both these cases the proceedings were instituted by'a sub-contractor, and not by the contractor. Ho different doctrine, however, can obtain in favor of the contractor. His right to institute proceedings depends on the very same provisions as does the right of the sub-contractor. The same construction of the statute which is applicable to a sub-contractor is also applicable to the contractor. The statute draws no distinction between them.
The present case, however, arises under the lien act of 1863, and the provisions of that act must be examined.
The first section of that act provides for the obtaining a lien, on complying with the sixth section; .the fourth and fifth sections provide for the institution, by any person who has filed a lien, of proceedings to enforce or foreclose the lien by the service of a notice; and section six provides for the filing with a county cleric of a certain notice.
These sections are, so far as the present point is involved, substantially the same as sections one, four, and six of the act of 1851. The first section of. each act provides for obtaining a lien, by filing in the county clerk’s office a notice prescribed by the sixth section of each act within the period prescribed by that sixth section; and each act (the act of 1851 by the fourth section, and the act of 1863 by fourth and fifth sections) provides a mode for enforcing, foreclosing, or bringing to close, the lien given by it by the service of a notice.
Thus far, then, the decisions under the act of 1851 are applicable to cases arising under the act of 1863. Those cases, as well as the reasoning founded on the structure of the first, fourth, fifth, and sixth sections of the act of 1863,' establish that a notice, as prescribed by the sixth section, must be filed as prescribed by that section, in order to give a lien; that there must be a lien *277 created, as prescribed by that section, whereon to found the proceedings instituted by the service of a notice under the fourth and fifth sections, to enforce or foreclose; and if the defendant makes and establishes the point that no such lien has been so created, any proceedings instituted under the fourth and fifth sections must fall.
We must,therefore, look further to find an authority, to render judgment in a case where the point is raised that a lien has not been created pursuant to section six, and is sustained.
Such authority is supposed to be given by the ninth section, which provides: “ Judgment may be enforced by an execution, on which the property on which the lien is adjudged may be sold, and the proceeds distributed as ordered by such judgment; and personal liabilities may be enforced by execution against the property of any party against whom a personal judgment shall have been rendered.
“ The contractor shall be personally liable to the lienor for the whole amount of the indebtedness, and the owner to the extent of the amount due by him to his contractor.”
It is evident that this section contemplates cases in which, if any judgment is rendered in favor of the claimant, it may be in personam as well as in rem. But there is nothing in it which extends the power of the Court to render any judgment whatever beyond that given by the previous sections. Indeed, the last clause of this section especially limits the right to obtain a personal judgment under the act to that class of claimants who shall have created a lien under the act, viz., the lienors. Thus adding another link to the chain of reasoning which shows that the whole object and purview of the several provisions of the act is to provide a means whereby a lien may be created, and a mode of enforcing it when so created.
But there are other provisions of the act of 1863 which should be noticed.
Section four requires any person who (being authorized by having filed a lien) shall institute a proceeding to enforce or foreclose the lien to make each and every person or persons *278 who have filed liens parties to the proceedings, and also provides that any person filing a lien before final judgment shall be notified to appear and join in the proceedings.
Section five provides that the Court shall proceed without regard to matters of form, which shall be amendable at all times, while the proceedings progress, without costs, and judgment shall be rendered according to the equity and justice of the claims of the respective parties.
Section seven provides that the Court may determine the rights of all parties, and the amounts due to each and by whom to be paid, and that every party shall be at liberty to take proof for or against any claim or lien, and such judgment or decree shall be made thereon, as to the rights and equities of the several parties among themselves, and as against any owner, as may be just.
It is obvious that the design of these provisions is to bring all parties who have, or claim to have, liens by reason of filing notices under section six, before the Court, as well as the owner and contractor, and adjust the respective rights which each has, by virtue of the hen created by him under section six.
It, however, does not authorize the adjustment of any rights other than those secured by a lien so created. In the absence of any positive direction to the contrary, these provisions must be construed as subordinate to the leading principle pervading the whole statute. That principle is to give to parties who comply with certain prerequisites a lien, and then to provide a mode for the summary enforcement of that hen. Of course, if no hen has been created, there is nothing to be enforced by the mode provided.
But, it may be suggested, that if the proceedings instituted by a party are to be dismissed altogether because he has not properly obtained a hen, then each lienor would have to institute proceedings on his own behalf against all the others, in order to prevent his rights from being barred, in case of such dismissal, by the lapse of the' statutory limit of ten days within which proceedings are allowed be instituted; and thus there would be as many proceedings’ as lienors, which is contrary to the intent of the above-cited pro *279 visions. Even if this should unfortunately be the result, yet this consideration would be insufficient to overcome the other clauses of the acts, which base the right of a claimant to a judgment in his favor (he being otherwise entitled thereto) upon a lien having been in fact created by him, or an admission by the defendant, either expressly or tacitly, of such creation.
But this does not necessarily follow. The court obtains jurisdiction over the persons of the parties by the service, on them, of the prescribed notice. The existence of a lien created by the filing of a notice is not a necessary element in the gaining of this jurisdiction, although it is essential to give jurisdiction over the subject-matter, since, unless a lien has been created, there is no authority conferred by the statute to render any judgment against the defendant.
The question whether a court, in an action its jurisdiction in which over the subject thereof depends on the existence of certain matter, can obtain jurisdiction over the person of the defendant by service of process, was alluded to in the opinion delivered by me in Bolton -y. Jacks, and some doubt expressed concerning it.
On subsequent reflection, I think it can. Jurisdiction over the person depends solely on the service of such process or notice as the law provides for the bringing of the parties defendant into court.
If the process served in any given case is one of the ordinary processes authorized to be served in the several proceedings over which the court has jurisdiction, without any proof or order of the court being required for its issue, the party is bound to obey it, for the law prescribes that he may be brought into court in that manner. Whether after he is brought into court he can be- proceeded against to judgment depends on whether the matter alleged against him is such as the court is authorized to pronounce judgment upon against a defendant brought into court in that mode; or, in other words, whether the court has in that action jurisdiction over the "subject-matter thereof as against the defendant.
*280 If the party defendant being thus brought into court refuse or neglect to appear and contest, he will be bound by the judgment, unless the record shows on its face that there was no jurisdiction over the subject-matter. And this for the reason that he had his day in court, and was bound, if facts existed showing that the court had no jurisdiction, to bring them forward, and he cannot take advantage of his own neglect to avoid its consequences.
Of course, if he appear and contest the facts giving jurisdiction and is defeated, he cannot afterwards question the jurisdiction, except on appeal.
The reason why he is not bound by a judgment, the record of which shows on its face no act of jurisdiction, is because the record carries with it its own condemnation, and shows that although in form a judgment, yet it is in fact no judgment.
The expression in the opinion in Bolton v. Jacks that “ it seems a logical anomaly to say that' the refusal to obey a mandate issued without authority admits that there was authority,” is probably correct as an isolated proposition, but used in the connection in which it was in that opinion, it intimates that the authority to issue the mandate depends on jurisdiction over the subject-matter, which I am of opinion is incorrect.
To guard against misapprehension, it may be observed that the general principle is, that to bring a defendant into court the process must be personally served, and when a statute authorizes a departure, by reason of the existence of certain facts or proof of them, those facts must in the one case exist, and in the other be proved to the satisfaction of the court, otherwise there is no service. So, too, when a certain kind of process is authorized to be issued on the proof of.certain matters, such proof must be made and tend to establish the matters, otherwise its issue will be without jurisdiction, for there is no case in which such process can issue without such proof.
The establishment or concession that a lien has been created by the filing of a notice, as prescribed, being essential to give jurisdiction over the subject-matter, it resulted that, under the *281 lien laws prior to 1863, when the only lien that could be enforced or contested in any one proceeding was that which the claimant in the proceeding claimed to have created, if the defendant made the point that no lien had ever been obtained by the claimant, and the court so held, the whole proceeding must be dismissed for want of jurisdiction over the subject-matter.
This is the effect of the decision in Beals v. Congregation Bnai Jcshurun (1 E. D. Smith, 654).
But the provision of the act of 1863, now in question, introduces a new element. It brings into the proceedings all parties who claim liens by reason of having filed notices, and authorizes an adjudication in their several claims to liens not only as between them and the institutor of the proceedings, but as between them and the owner, and also as between themselves. The subject-matter of the proceeding, then, is not only the claimed lien of the plaintiff, but also the several claimed liens of the defendants. The court having obtained jurisdiction over the persons of all the parties by the service of the notice, I see no objection to the statute authorizing it, although it is compelled to dismiss the proceedings so far as the institutor thereof is concerned for want of jurisdiction over the subject-matter of his claim, to retain the proceedings for the purpose of adjudicating on those claims of the other parties over the subject-matters whereof it has jurisdiction.
This is the sole effect of the provision in question.
A few words as to the cases cited by appellant’s counsel other than Maltby v. Greene.
The case of Brown v. Wood, (2 Hilton, 579) does not bear on the subject. Its effect is simply to hold that, when the court has jurisdiction over the subject-matter and person, the proceedings are to be conducted conformably to the Code of Procedure and the usual practice of the court, except when the lien law provides otherwise. (
In Blauvelt v. Woodworth (31 N. Y., 287) the point whether a personal judgment could be rendered in a case where no lien was created was not raised, or discussed, or decided. On the *282 contrary, one of the principal points of this discussion and decision was as to whether there was an effective lien, and the court held there was.
Grogan v. Raphael (6 Abbt., 306—same case as Grogan v. McMahon, 4 E. D. Smith, 754) arose under the act of 1855, and was decided on the provisions of that act. Besides, it was conceded in the case that the plaintiff had properly created his lien. What the decision of the court would have been if it appeared that he had created no lien whatever does not appear, and could not appear, as the point did not arise.
In Eagleson v. Clark (2 E. D. Smith, 644) the court held that the plaintiff had properly created- a lien and rendered judgment against the contractor for the amount reported due, and costs, and against the owner declaring the amount reported due, and costs of default and of judgment thereon only to be a specific lien on the premises, directing a sale thereof to raise that sum, and that the proceeds of sale to that extent be applied on the judgment, and that the plaintiff have j udgment against the contractor for the balance, and the deficiency, if any.
The question in the case was whether an owner who made default was liable for the costs created by a contract with the contractor. The Court held he was not. And, therefore, those costs were not declared a lien, but judgment given against the contractor for them.
In Grogan v. Mayor, &c., and McAuliffe (2 E. D. Smith, 693), the plaintiff had filed a proper notice of claim under section six of the act of 1851, and duly served on both defendants the proper notice to bring them into court. McAuliffe, the contractor, made dafault, but the Mayor, &c., the- owners, appeared and defended upon the ground, among others, that plaintiff had no lien, because the work done and materials furnished by McAuliffe were not in conformity with the contract between him and them. The issue between the plaintiff 'and defendants, the Mayor, &c., as to whether such work and materials were in conformity with that contract or not, was tried before a jury, who found they were not.
*283 The Court held that the plaintiff had no lien against the defendants, the Mayor, &e., the owners, and rendered judgment in their favor; but they rendered a personal judgment against McAuliffe, the contractor, for the amount of the claim.
This case arose under the act of 1851, as amended in 1855. It will be seen that judgment went against the contractor by default, and the question as to whether there could be a personal judgment rendered in proceedings under that lien law against the contractor, when it appeared that no lien existed, was not raised, argued, or considered.
This brings me to the case of Maltby v. Greene (1 Keys, 548). That case arose under the act of 1844, chap. 305.
The specifications and papers required to be filed by the statute to create a lien were duly filed, and the notice to bring the defendant into court was served. The defendant did not appear, judgment by default was entered, damages assessed on a writ of inquiry, and final judgment entered against the defendant. From this judgment defendant appealed to the General Term, where the appeal was dismissed. From the order of dismissal defendant appealed to the Court of Appeals. It does not appear whether the plaintiff was contractor or sub-contractor.
In the Court of Appeals two opinions were delivered—one by Judge Ingraham, and one by Judge "¡Wright.
Judge Ingraham held that the order of dismissal was appeal-able to the Court of Appeals, and then held that there could be no appeal to an appellate tribunal from a judgment by default ; and therefore was in favor of affirming the order made at General Term.
Judge Wright, after stating in his opinion that the Supreme Court dismissed the appeal on two grounds—first, that it would not lie to review a judgment rendered by default; and, second, that, if tMs were otherwise, there was no error or irregularity in obtaining the judgment, or at least none of a jurisdictional nature—holds that the Supreme Court was right on either ground, and then proceeds to discuss the latter one. After referring to various sections of the law, and showing that the proceed *284 ings had been conducted in conformity therewith, he concludes that the Supreme Court properly dismissed the appeal, unless from the face of the record of the court below it appeared that that court had no jurisdiction of the subject-matter, or entered a judgment unauthorized by the statute; and then holds that neither of these things appeared, but on the contrary the jurisdiction over the subject-matter appeared on the face of the record, by the recital therein of the talcing of the incipient meas%t,res tp create a lien, and that the judgment shown by the record, although a general personal judgment, was in the form authorized by the statute. He, therefore, held that the record disclosed no error, jurisdictional or otherwise.
There is nothing in this opinion which indicates that where a defendant makes and establishes the point that no lien has been created, a personal" judgment can be rendered, except the refer-fence to the case of Freeman v. Cram, which has already been commented on, and the evidently unguarded expression, “ That the Court requires jurisdiction of the subject-matter, and of the parties, by serving personally the notice required to bring the parties into court.” I say unguarded, for nothing can be better settled than that the mere service of process does not give jurisdiction over the subject-matter. It is also to be observed that in a subsequent" part of the opinion, in discussing whether jurisdiction was shown on the face of the record, it is intimated that the filing of the requisite notice is necessary to give jurisdiction over the subject-matter. In fact, the question as to whether, under such circumstances, a personal judgment could be rendered, was not in the case. It was neither necessary to discuss nor determine it in order to dispose of the case. Whatever expressions may be contained in the opinion bearing on the subject are therefore obiter.
There is another expression which may, perhaps, be questionable ; and that is, the record need not show jurisdiction on its face, in order to sustain the judgment on appeal. It is not now necessary to enter into that discussion.
The conclusion to which I have arrived is that, under the act *285 of 1863, the court may, and, if the point is raised, must adjudicate on the validity of the several liens which the parties to the proceeding claim to have created; that it may adjust the respective rights of those parties whom it adjudges to have created liens as between themselves, the owner, and contractor, adjusting the amounts due to each of such lienors, and determining from whom the same are due; may adjudge such amounts to be specific liens on the premises, whenever such liens were created to an amount not exceeding the sum due to the contractor from the owner • may decree the sale of the premises, and apply the proceeds, to the extent of such amount due from the owner to the contractor, to the payment of the amount adjudged liens on the premises, in full, if suiiicient; or, if insufficient, then according to the priority of such liens, as prescribed by section three; and if such premises do not produce an amount equal to the sum due to the contractor from the owner, and the amount they do produce is insufficient to satisfy all the liens so adjudged to be on the premises, then a personal judgment may be rendered against the contractor for the whole amount of said deficiency, and against the owner for so much thereof as, together with the proceeds from the sale of the property, will equal the amount due the contractor from him, in favor of the parties whose liens are unsatisfied, framing the judgment against the owner in such manner as that the amount for which it is given shall be applied according to priorities prescribed by section three; but if the point be raised and established that one or more of the parties to the proceeding have not created valid liens, no judgment whatever can be rendered in favor of such party or parties, but judgment must go against them, declaring them to have no lien, and remitting them to the ordinary remedies provided for the collection by a creditor from his debtor of the debt due him.
The want of power to render a personal judgment against that party to the proceeding who, independently of the statute, is personally liable, in cases where it is adjudged that no lien has been created, may be a defect. But if it is, the duty of providing a remedy devolves on the legislature, and not the court. *286 The eoni't should not, by a forced construction, usurp the legitimate powers of the legislature.
' This leads to the inquiry whether the plaintiff has obtained a lien which can be enforced by these proceedings.
Here we must inquire, first, on what premises he has attempted to obtain a lien by the notice he filed; and, second, whether he has established that he has done any work thereon, and, if he has, whether he has established it in such manner as that the lien therefor can be enforced.
The notice of lien filed is for mason and flagging work done on premises situate on the westerly side of the Fourth avenue^ and known as No. 370. A diagram is annexed. If we erase from the diagram the words “ Madison avenue,” it shows premises situate on the. north-east corner of Madison avenue and Twenty-seventh street. If the words Madison avenue are suffered to remain, then there is no such plot of ground in the city as that shown in the diagram. So that, whatever way we view the diagram, no work was done on the premises shown by it, and, consequently, no lien thereon for any work.
But, rejecting the diagram, then the notice is for work done on No. 370 Fourth avenue.
The proof shows that there were five houses, and No. 370 was on one of them, but it does not show which of the five was Ho. 370, nor does it show that the whole five were known by that number; the proof further shows that some work was done on each of the houses, and the bill of particulars (fol. 25), taken in connection with the oral proof (fol. 31 to 36, and 55), shows that the great bulk of the work was done on the second house, and the only work done on the others was the taldng up and resetting the flagging of the sidewalk in front of them. -
This proof does not establish that any work was done on No. 370. other than the flagging of the sidewalk in front of it, which was of a trifling amount. For this small amount plaintiff had a lien on No. 370, and would have been entitled to a judgment enforcing it, if he had proved the amount of it. But as he neglected to prove its amount, it was impossible to render judgment for it.
*287 Judgment for costs was properly rendered against the plaintiff. Although the Court, not having jurisdiction over the subject-matter, has no power to render judgment against the defendant in respect thereto, yet the plaintiff, by bringing his proceeding in the court, submitted himself and the decision of his claim to its jurisdiction; and it^does not now lie in his mouth, after bringing the defendant into court, compelling him to litigate the question of jurisdiction, and subjecting him to costs and expenses, to object that the court has not jurisdiction to render judgment for such costs, any more than it ddes to object that it has not power to decide the question of jurisdiction which he has brought before it for determination adversely to him, and in such decision render a binding judgment. Every court (having jurisdiction over the parties)' has adequate jurisdiction over the parties and the action to determine the question of jurisdiction over the subject-matter, when that question is raised; and that jurisdiction is sufficient to authorize a judgment for the costs incurred in the determination of the question against the party invoking the aid of the court.
Judgment affirmed, with costs.