## HAUPTMAN *v.* CATLIN and Wife.

The lien of mechanics and materialmen in the city of New York, under *chap.* 513 *of* 1851, attached for labor and materials furnished after the act though rendered under a contract made before the act took effect.

The lien attached upon the separate property of married women as well as on that of unmarried females or men.

The notice to be served on the county clerk is sufficient if it specifies the name of the person against whom the claim is made, the name of the owner of the building, its situation and the amount of the claim, stating it to be under the statute. It is unnecessary to specify the name of the person with whom the contract was made.

*It seems* that the title and interest to be sold under a judgment is that which the owner had at the time of filing notice of the lien, as well under the act of 1851 as under the amendment, *chap.* 404 *of* 1855.

APPEAL from the Common Pleas of the city and county of New York. The action was to enforce a mechanic's lien, under the act of July, 1851 (*ch.* 513), for work done and materials furnished upon a building in the city of New York. The trial was before a referee, who found these facts: The dwelling-house, when the labor was performed and materials furnished, and when the contract therefor was made, was the sole and separate property of the defendant, Catherine Catlin, wife of John M. Catlin. The work was done and materials furnished pursuant to a contract made previous to the act of July 11, 1851, between the plaintiff and the defendant John M. Catlin, who acted therein as the agent of his wife, and with her knowledge and consent; said contract was made for her use and benefit. On the 17th of May, 1852, within six months after performing the work and furnishing the materials, the plaintiff, pursuant to the act of July 11, 1851, served a notice on the clerk of the county of New York that he had "a claim against John M. Catlin and Catherine Ann his wife," specifying its amount and character, and that the work was done and materials furnished in pursuance of a contract or agreement with the said John M. Catlin. It stated that the building, which it described, was

owned by Catherine Ann Catlin, and claimed a lien thereon and on the land on which it stood. A notice and bill of particulars of the amount claimed to be due were served on the defendants, and proceedings duly taken to create and perfect the plaintiff's lien. The referee reported that the plaintiff was entitled to judgment for a sale of the dwelling-house and land, and for payment of the sum of $262 which remained due him. Judgment was entered accordingly for the sale of the right, title and interest which Mrs. Catlin had in the property on the 17th of May, 1852, without any personal judgment against her or her husband. This judgment having been affirmed at general term, the defendants appealed to this court. The cause was submitted on printed arguments.

*W. I. Street*, for the appellants,

*H. Smales*, for the respondent.

DENIO, J. I have come to the following conclusions upon this case:

1. The defendant's property was not exempt from the operation of the statute by which liens are authorized to be created in favor of mechanics and others, on account of her being a married woman. (*Laws of* 1851, *ch.* 513.) Even before the late statutes respecting married women, they were regarded as *femes sole* in respect to their separate property, and were, as to such property, liable on their contracts respecting the same, to the same extent as though they were not under the disability of coverture. (*Bell on Husband and Wife*, 519; *Jaques* v. *The Methodist Episcopal Church*, 17 *John.*, 549.) The act of 1849 gave them an unlimited right to take, hold and convey real and personal property (*ch.* 375). It should also be added that prior to the enactment of the lien law under consideration, the Legislature had abolished the distinction between legal and equitable remedies. This being the state of the law, we are to determine whether the real estate of married women is within the purview of the lien law or is exempt from its operation,

We may admit that the act of 1849 did not enlarge the capacity of a married woman to make contracts. She could already contract for repairs or improvements to her separate estate as fully as one not under any disability could do it. The remedy of the other contracting party was for a time confined to the Court of Chancery; but when the lien law was passed, it might be sought in the same forum and under the same forms of proceeding as though the claim came within the description of demands formerly called legal. Her title to her estate had also, by force of the law of 1849, become a legal one. She held as if she were unmarried, and the intervention of trustees was not required. Then the lien law was passed, which subjected all owners of houses and buildings to a lien to secure the performance of their contracts for their construction and repairs. There was no exception in terms in favor of married women, and there is none in the nature of the case, or in reason, policy or convenience. Under the power conferred by the act of 1849 to convey their real property, "or any interest or estate therein, and the rents, issues and profits thereof, in the same manner and with the like effect as if they were unmarried," a married woman may, without doubt, make a valid mortgage of her lands, under which her equity of redemption may be foreclosed as in other cases. When, therefore, a general statute gives a lien against all owners who shall become parties to certain contracts, married women, as well as unmarried ones and men, are embraced.

2. The notice of the lien served on the county clerk was sufficient. It embraces all the matters required to be stated in the sixth section of the act. It probably was not necessary to insert the name of Mr. Catlin, but I do not think it is vitiated by adding his name. It is stated that Mrs. Catlin was the owner, which sufficiently showed that the lien was intended to attach only to her land. It is not stated that the contract for the work was made by her, and that was not necessary. The statute requires only the name of the person against whom the claim is made, the name of the owner of the building and its situation and the amount of the claim. When these particulars

are mentioned, and it is stated that the claim is made pursuant to this act, it sufficiently appears that the services are claimed to have been made under a contract by which the owner is bound. The notice is sufficient within these principles.

3. I am of opinion that the judgment rendered in this case, directing the sale of the right, title and interest which Mrs. Catlin had in the premises upon which the labor and materials of the plaintiff were expended, on the day of the giving notice of the lien, was the correct one to be given under the act of 1851, which is very loosely drawn in this respect. A doubt might be raised whether the original lien attaching upon serving the notice was not provisional merely, and to be superseded by the ordinary lien acquired by judgment creditors when the party prosecuting should obtain judgment. But the act of 1855 (*ch.* 404), which was passed before the trial, makes all this very plain. It provides that the judgment shall direct the sale of the title of the party proceeded against, to the premises to which the lien attached, which he had at the time it attached; and the judgment in this case conforms to that direction.

4. No valid objection can arise out of the fact that the contract for this labor and these materials was made before the act of 1851 took effect. The act itself requires that the labor and materials shall be thereafter provided, but it is not said that the contract must be made after the passage of the act. The act relates merely to the remedy, which the Legislature may regulate according to its pleasure. It was competent to provide a new remedy for the builder or mechanic who was already under a contract for the work, and to limit it to cases where the work was yet to be performed. This is in effect what was done. It appears, it is true, that a portion of the labor was performed before the act took effect. This could not legally be recovered under the act; but payments were made exceeding the amount of labor not recoverable under the act, and I do not see any objection to crediting these payments against the first items of the account and enforcing the statute remedy for the residue. This is the effect of the judgment.

There are some other objections of less moment than those which I have mentioned. These have been examined, but they do not appear of sufficient gravity to require any particular remark.

I do not think. any of them are well taken, and am of opinion that the judgment should be affirmed.

JOHNSON, Ch. J., and SELDEN, J., dissented.

Judgment affirmed.