Meehan v. Williams.

HUGH MEEHAN *v.* GEORGE E. WILLIAMS, SARAH J. K. WIL-
LIAMS, JOHN A. WILLIAMS, *impleaded with* WILLIAM J.
HARGROVE, MICHAEL CLARE, *and* JOHN HEANY.

Where, in a proceeding instituted by a contractor under the Mechanics' Lien Law
of 1863, it appeared that, after the commencement of the work, but before its
completion, and the filing of the notice of lien, the owner conveyed the prem-
ises to her brother-in-law, one of the defendants, who gave her his note for
$5,000, payable one day after date, and upon which no payments had been
made, and who never took possession of the premises, but immediately leased
them to his sister-in-law and her husband, who had since occupied them, pay-
ing no rent therefor; *held*, that the conveyance was not *bona fide*, but was made
with the intent to defraud the contractor, and defeat his lien, and that the latter
had an incipient lien when the transfer was made, which became absolute on filing
notice thereof with the county clerk, and that he was entitled to have the fraud-
ulent conveyance declared void so far as it interposed any obstacles to the en-
forcement of his lien.

The plaintiff contracted with the owner and her husband to erect a house by the
15th day of February, 1865, the consideration to be paid in seven installments,
on the completion of certain portions of the work. The husband, who had been
a builder, visited the building every other day, and directed changes to be made
and extra work to be done, and paid the plaintiff as the payments became due,
making no objection to the work done and materials furnished, nor to the delay
in the work of plastering. The house was not completed on the 15th February,
1865. Ten days after that date, the plaintiff received from the husband pay-
ment of the fourth installment under the contract; and on the 17th day of
March was promised payment of the fifth installment, as soon as certain
moldings should be put on. The contract provided that on failure of the
plaintiff to provide a sufficiency of men or materials, the owner, on giving
three days' notice in writing, might complete the building, and deduct the ex-
pense from the contract price. The owner and her husband, on the 23d March,
1865, gave notice to the plaintiff to discontinue work, and that they would hold
him for damages for failing to complete the building by February 15th.

*Held*, that the husband acted throughout as his wife's agent and by her authority,
so as to make all that he did binding on her.

*Held*, that as the variations from the contract in the building were known to the
husband, and he had not objected, they were made with his concurrence, and
that there was an acceptance of the work up to the time of the payment of the
fourth installment. *Held*, also, that the owner, having assented to an extension

beyond the strict letter of the contract, had no right, on March 23d, to put an end to the contract, and the plaintiff could recover for all the contract and extra work done and materials furnished up to that date, and the owner, under the circumstances, could not recoup damages for delay and deficiencies in the work.

Under the Act of 1863, the lien becomes absolute, to the extent of the right, title, and interest which the owner had in the premises, at the time when the notice was filed, which interest cannot be divested by any sale or transfer made after the commencement of the work or furnishing of materials.

In an action to foreclose a mechanic's lien, a judgment directing the sale of the premises under execution, and providing the manner in which the proceeds shall be distributed, is in strict conformity with the statute.

APPEAL from a judgment entered on the report of a referee, and the order confirming said report.

This was a proceeding to foreclose a mechanic's lien, under the Act of 1863, and was brought by the contractor against the owners and subsequent lienors. Issue having been joined, the action was referred to Samuel F. Barger, Esq., to hear and determine the issues therein.

On November 9th, 1864, the plaintiff, by a written contract with the defendants, George E. Williams and Sarah J. K. Williams, his wife, agreed to erect and finish a building, on 120th street, near Second avenue, owned at that time by Sarah J. K. Williams, for the sum of $3,475, to be paid in seven installments, as stated portions of the work should be completed. The house was to be finished by the 15th day of February, 1865. It was agreed in the contract that, in case of the contractor's neglect to supply a sufficiency of materials or workmen, the owner, after three days' notice in writing being given, might finish the work, and deduct the expense from the contract price. The plaintiff commenced the work, and testified, on the trial, that finding the weather too cold, he informed Williams and his wife that it would be impossible to do the plastering till the weather moderated, and as they did not object, the house was not finished by the 15th of February, 1865. This was denied by the defendants, Williams testifying that plaintiff promised to build fires in the rooms, so as to go on with the

work. The defendant, George E. Williams, who had been a practical builder, was at the house nearly every day, and had many changes made and extra work done, and paid the plaintiff money, &c. Ten days after the time limited in the contract for the completion of the building, the defendant, George E. Williams, paid the plaintiff the fourth installment, without any objection as to any delays or defects. On the 17th day of March, 1865, Sarah J. K. Williams executed a deed of the premises to her brother-in-law, the defendant, John A. Williams, who never occupied the premises, but subsequently leased them to said George E. Williams and his wife for five years, and they continued to occupy the house after its completion, and had never paid any rent to the said John A. Williams. The only consideration given by John A. Williams for said deed or conveyance was his note for $5,000, payable one day after date, and no payment had been made thereon. On the 23d day of March, 1865, defendants, George E. and Sarah J. K. Williams, notified the plaintiff to discontinue work, on the ground that he had failed to complete the house by the 15th February, 1865, and that they claimed damages for such failure. The plaintiff did so, and filed his notice of lien on the 24th day of March, 1865, for the work done and materials furnished, and extra work done since the fourth payment. The claims of the defendants, Hargrove and Clare and Heany, were admitted as sub-contractors. On the trial many witnesses were examined as to the quality of the work and materials. The referee, declining to find as requested by the defendants, found and reported:

1. That the acts of the defendants, George E. Williams and Sarah J. K. Williams, amounted to a waiver of all variances from the contract, up to and including the fourth payment, and an acceptance of the work up to that time.

2. That the conveyance from Sarah J. K. Williams to John A. Williams was not a *bonâ fide* conveyance, but was made with intent to defeat the plaintiff's lien.

3. That the plaintiff had acquired a lien as a contractor for his work done and materials furnished, and that he was entitled to judgment for foreclosure, and satisfaction for the sum of $866.21, &c.

From the order confirming the report the defendants, Williams, appeal to the general term of this court.

*A. H. Reavy,* for the appellants, Williams.

Meehan abandoned the work. It is not enough for him to say, that because a mere notice was received by him, he was justified in leaving the work. He should establish that he was so prevented as to render it impossible for him to continue. The defendants had a right to complete the house at a reasonable time, and did so at an expense of $1,830, which, being more than the plaintiff would be entitled to had he completed the work, the referee should have found for the defendants (4 E. D. Smith, 724). Where there are deficiencies in work done under a contract, although the defendants accept the work, they may claim damages therefor by way of recoupment (1 Hilt. Rep. 389). The referee erred in adjudging the premises to be sold. All that could be sold (if plaintiff was entitled to judgment) was the right, title, and interest of Mrs. Williams therein (20 N. Y. R. 247; Ses. Laws, 1863, p. 860, sec. 2; 19 N. Y. Rep. 440). The conveyance to John A. Williams was made in good faith. The *bona fides* of it, however, could not be inquired into, as the cause of action to set aside a conveyance upon the ground of fraud could not be blended with a proceeding to foreclose a mechanic's lien in the same case. Under the Act of 1863, sec. 1, a contractor, &c., can have a lien only to the extent of the right, title, and interest then existing of the owner of the premises.

*Chas. A. Rapallo,* for plaintiff and respondent.

The decision of the referee upon questions of fact will not be disturbed, unless very clearly against evidence (*Sinclair* v. *Tallmadge,* 35 Barb. 602). Even though Mrs. Williams had not been cognizant of all the acts of her husband, yet, having once allowed him to act as her agent in the management and general direction of this work, she would be bound by his acts

(*Calvin* v. *Currier*, 22 Barb. 371; *Owen* v. *Cawley*, 42 Barb. 105). An express consent in words is not necessary to excuse delay or variations. Assenting or delaying objections thereto is a sufficient waiver (*Sinclair* v. *Tallmadge*, 35 Barb. 602; *Smith* v. *Gugerty*, 4 Barb. 614; *Flynn* v. *McKeon*, 6 Duer, 203; *Lawrence* v. *Dale*, 3 Johns. Ch. 23). The full performance of the work was prevented by the wrongful acts of the defendants. The referee did not err in refusing to find that the defendants are entitled to recoup damages for delay, or for variances in workmanship. All such delays or variances were assented to or waived by the defendants. Performance waived ·or prevented by the defendant is full performance; and a party cannot take advantage of nonperformance, if it is caused by his own act (*Farnham* v. *Ross*, 2 Hall, Superior Court R. 167; *Green* v. *Haines*, 1 Hilt. 254). No damage to the defendants was proved. On the question of defects in workmanship, the testimony is greatly in favor of the plaintiff. The Law of 1863 gives the mechanic a lien " to the full and fair value of work and materials," " and notwithstanding any sale, transfer, or in-·cumbrance made or incurred at any time after the commence-·ment of the work, or furnishing of materials." Hence, no conveyance made after the commencement of the work, and within three months from the time of its completion, can defeat the lien. The .law of 1863 was intended to prevent fraudulent conveyances from injuring the mechanic, and to mitigate the severity of the de-·cisions under the laws of 1851 and 1855 (*Blauvelt* v. *Woodworth*, 31 N. Y. 285). The lien law of 18 ¡3 is not unconstitutional. Under that law, it is the act of commencing to do work, or to furnish materials, which creates the equitable lien, as work done upon personal property in ordinary cases of bailment does. The filing of notice is a requirement for putting in legal form a previous equity. The law merely requires purchasers, before their contracts are completed, to look beyond the lien docket, and learn by inquiry whether any work has been done upon the property within three months which remains unpaid for (*vide Blauvelt* v. *Woodworth*, 31 N. Y. 285). The conveyance to John A, Williams was a fraud upon the plaintiff. The case

stands precisely as if no such conveyance had been made, and Mrs. Williams had continued the nominal, as well as the actual, owner from the time the contract between herself and the plaintiff was made, until the notice of lien was filed. The plaintiff only asks that a conveyance made to defraud him of this debt shall not be suffered to prejudice him in his action to enforce it.

*John A. Foley*, for respondent, Heany.

*David McAdam*, for respondents, Hargrove & Clare.

By the Court.—Daly, F. J.—The evidence fully justified the finding of the referee, that the conveyance of the premises to John A. Williams was not *bonâ fide*, but was made with intent to defraud the plaintiff and defeat his lien. The plaintiff had a right to impeach its validity in this action. He had an incipient lien when this transfer was made, which became absolute, under the Act of May 5, 1863, when the notice was filed with the county clerk. The Act of 1863 provides that incumbrancers may be made parties in the action or proceeding, to enforce the lien. John A. Williams, to whom this fraudulent conveyance was made, comes under the denomination of an incumbrancer, and as such was made a party; and the plaintiff, having established in the action that he was a creditor of the fraudulent grantor to the extent of $866, was entitled to have this conveyance declared void, so far as it interposed any obstacle to the enforcement of his lien (2 Rev. Stat. 137, § 1; *Clute* v. *Fitch*, 25 Barb. 432; *Van Etten* v. *Hurst*, 6 Hill, 311). The Act of 1863 declares that the court may determine the rights of all the parties, and that such judgment or decree shall be made as to the rights and equities of the several parties *among themselves*, and as against any owner, as may be just (§§ 2, 5, 7). This is ample to confer upon the court, in this action, the power to give relief against this conveyance, and to declare it, as against the rights of the plaintiff, to be fraudulent and void; and the conveyance, having been adjudged to be fraudulent and void, it becomes unnecessa-

ry to consider whether there is any thing in the objection raised to the constitutionality of the provision in the Act of 1863, which declares that the lien shall become absolute, notwithstanding any sale, transfer, or incumbrance made after the commencement of the work or the furnishing of the materials.

The plaintiff testified that he could have completed the work by the 15th of February, but for a delay arising from the impossibility of plastering on account of the weather. Several of the defendants' witnesses testified that the delay in the plastering could have been avoided by putting up stoves in the building and keeping up fires to dry the walls, and Williams and his wife swore that the plaintiff said to them that he would do so. This the plaintiff denied, and gave a very different version of what passed between him and Mr. and Mrs. Williams upon the subject, while one of his witnesses, a plasterer, testified that fires will not have much effect in drying walls. The evidence upon this head being conflicting, we must assume that the referee found that the testimony on the part of the plaintiff was the more reliable, and that testimony was to the effect that both Williams and Mrs. Williams assented to the delay. The plaintiff swore that he told Williams that it was impossible to do the plastering on account of the weather ; that if he insisted upon having it done it would tumble when a thaw came, and that Williams answered that he did not want it to tumble on him—in which connection it may be remarked that the plaintiff swore that Williams told him when he ordered the extra work to be done, that he owned the premises, and that Williams never told him at any time that his wife was the owner of the property. The plaintiff testified, further, that he told Williams, that he, the plaintiff, would be obliged to wait until the weather would permit, and that Williams replied that the weather might change, and he must get at it as quick as he could, making no objections to the delay. When further interrogated upon this point, the plaintiff stated that there were two carpenters present, whom he named, when this conversation occurred, and that Williams said that he wanted the plaintiff to get on as *soon as he could*, and that Mrs. W.

said that she did not want to move into the house before it was perfectly dry. We have here the fact that neither he nor she made any objections to the delay, and in addition a much more important circumstance, in respect to which there was no conflict, that is, that Williams, in the presence of his wife, paid the plaintiff the fourth installment ten days after the time limited *in the contract* for the completion of the building. Williams swore that he never agreed with the plaintiff to extend the time, that his wife never authorized him to do so or to modify the contract, and her affidavit was read to the same effect. But this was rather swearing to a conclusion than controverting the specific testimony from which a different inference was drawn. He did swear that he did not tell the plaintiff that if the work could not be done in cold weather he did not want him to do it; but this was contradicting what was sworn to by the plaintiff; and the referee believed the plaintiff.

The evidence was ample to warrant the referee in finding that Williams acted throughout in the whole matter of the erection of the building as his wife's agent, and by her authority, so as to make all that he did binding upon her. From the peculiar relation of the parties, that of man and wife, evidence by no means as conclusive as that which was given in this case would have been sufficient to show that such was the fact. According to his own statement, he had worked as a practical builder; he had put up, and for nine or ten years he had a knowledge of, and was familiar with, mason and carpenter work. He was about the premises generally every other day, superintending and directing the work, and carefully examined, at times, according to his own statement, the manner in which it was done, and the quality of the materials furnished. He ordered changes to be made and extra work to be done, and the bill for the extra work was given to him. He signed the contract for the erection of the building, and when the plaintiff wanted Mrs. Williams to sign it, Williams, according to the plaintiff's statement, "did not seem to want her to." He made four payments to the plaintiff in his wife's presence. She never gave any directions to the plaintiff to make

any changes, but many changes were directed to be made by Williams, some of them involving extra work, for which he paid, and the plaintiff testified that what he meant by Williams having the superintendence of the work was, that it had to be done to suit him. Mrs. W. was once at the building while the plaintiff was there, and all that he ever had to do with her respecting it was when she told him she did not want to move into a damp house. When the plaintiff called at Williams' house for the last two payments, he saw Mrs. W., who told him that her husband was out, that he would soon be in and pay him, as he had the money; and the written notice to stop the work was given to the plaintiff by Williams, who said that he had sold the house, that the plaintiff had no liens against it, and that he must get his money the best way he could. No other conclusion could be arrived at upon this evidence but that Williams was acting throughout in place of his wife, as her agent and by her authority; that there was an understanding between them that every thing relating to the matter should be entrusted to him; that he, and not she, was to judge whether the work conformed to the contract; that he was clothed with authority to make or permit any alterations or changes he thought proper; to order extra work if he deemed it advisable, and to do every thing which she could or might do, either as one of the parties to the contract, or as the owner of the premises, or as the one for whose exclusive benefit the building was erected, and that his acts were to be binding upon her (*Colvin* v. *Currier*, 22 Barb. 373; *Owen* v. *Cawley*, 42 Barb. 105).

Many of the variations were made by his express direction. This we must assume that the referee found wherever the testimony of Williams was in conflict with that of the plaintiff. The plaintiff denied that he made any other variations, and if the fact were otherwise, they were made under the eye of the husband, without any objection on his part at the time, he superintending the erection as the agent of his wife, and being, as proved by himself, an expert. The referee, therefore, was justified in concluding, that if made they were made with

his concurrence, and that after they were made there was an acceptance of the work up to the time of the payment of the fourth installment (*Sinclair* v. *Tallmadge*, 35 Barb. 605). Williams testified that he discovered the variances or defects while the work was going on, and as he made no remonstrance or objection at the time (for the plaintiff testified that he made no objections whatever), it must be assumed that he regarded them as immaterial, and waived them, as an architect or other expert, similarly employed, might have done on behalf of his principal. That he did so is to be inferred, not only from the fact that he knew of them and made no objection, but from the fact that he afterward promised to pay the plaintiff the fifth installment *as soon as certain moldings should be put on*, showing that that was all that he considered essential to entitle the plaintiff to the payment of the fifth installment. This was very conclusive, and fully justified the referee in finding that he had, in his capacity as an expert, waived all such defects and variance as immaterial; that, as many changes or alterations had been made by his express directions, he considered the work up to that time, with the single exception stated, as a substantial compliance with the contract. The referee was clearly right in holding that all such variances and defects were waived, and in inferring from the circumstances that Mrs. Williams and her husband, acting as her agent, assented to an extension of the time beyond the strict letter of the contract (*Smith* v. *Gugerty*, 4 Barb. 614; *Flynn* v. *McKeon*, 6 Duer, 203; *Lawrence* v. *Dale*, 3 John. Ch. 23).

On the 16th of March, 1865, Mrs. Williams made the fraudulent conveyance of the premises to John A. Williams, and on the 23d of the same month she and her husband gave a written notice to the plaintiff, directing him to discontinue the work, accompanied by the declaration of Geo. E. Williams to the plaintiff before referred to. The notice advised the plaintiff that others would be employed to complete the building, that the cost thereof would be charged to his account, and that the parties, Williams and his wife, would claim damages from him for the nonperformance of the contract, as they had

been kept out of the occupancy of the building and prevented from letting it. This notice did not purport to have been given under the provision in the contract which gave the parties, if the plaintiff should neglect to supply a sufficiency of materials and workmen, the power to provide both, and finish the building upon giving him three days' notice in writing, the expense to be deducted from the amount of his contract; and if it had been, there was no proof that he had neglected to supply a sufficiency of workmen or of materials; but, on the contrary, evidence that he was amply supplied with both. The notice, in fact, by its express terms, was upon the ground that the plaintiff had failed to complete the building by the 15th of February, 1865, and as the parties had, as the referee has found, assented to an extension of the time beyond that period, they had no right, on the 23d of March, to put an end to the contract upon any such ground. As the plaintiff, however, was directed to discontinue the work on the contract, he did so, and was at least entitled to recover what the referee awarded to him—the fifth installment of $400—he having done all the work and furnished the materials entitling him to that payment; $400, as the value of the portion of the work done and of the materials furnished under the sixth and seventh installments, and $66 for extra work; in all, $866. The question put as to the value of the work done and the materials furnished up to the time when the plaintiff left the building, the amount of money paid by him for materials and labor from the time he commenced, what was the value of all the work done by him and of all the materials he furnished, were properly excluded. The information they sought to elicit was immaterial. It could have no bearing on the measure of damages, which was the contract price when the installment was due, and the value of the materials furnished, and of the work which had been performed beyond that, when the progress of the work was arrested by the order of the owner and her agent, before the plaintiff could complete it to the point which would have entitled him successively to the sixth and seventh payments.

Williams and his wife having assented to the delay oc-

casioned by the impossibility of plastering from the cold weather and hard freezing, the plaintiff was bound to complete the building within a reasonable time after change in the weather allowed him to resume the plastering (*Green* v. *Haines*, 1 Hilt. 234). By the terms of the contract the building was to be completed in three months and six days. When the notice to stop the work was given, four months and seventeen days had elapsed, and the work was not then sufficiently completed to entitle the plaintiff to the sixth installment. One witness testified that, with a sufficient force of men, such a building could be erected and all completed in three months; and another witness said, that if prosecuted properly and with a sufficient force, four months would be ample; and when asked if it could be done in less, he said that it requires more time in winter, there being more delay in that season on the outside work; and it was shown that $1,830 was paid for completing the building, which was $765 more than the amount of the sixth and seventh installments, and that it was not finished until the 1st of May, following. I entertain great doubt from these facts whether the plaintiff proceeded with the work with that diligence which the law requires, yet the evidence is not sufficiently definite to enable us to say positively that the referee erred. There was the positive statement of the plaintiff that he could have finished it by the 15th of February, if the delay in the plastering had not occurred, and that delay may have been very much prolonged by a winter of protracted duration or of great severity, and it was in proof that the weather was very severe. An appellate tribunal would not be justified in assuming any thing not clearly deducible from the evidence which is before it, and should not be unmindful of the consideration that the evidence is rarely, if ever, brought before it in as perfect a form as it was received. We must assume that the referee concluded that the plaintiff would and could have completed the building, under the circumstances, within a reasonable time, if he had not been ordered to discontinue the work. I say we must assume this, as there is no finding upon the point, the twenty-third request of the defendants not being specific enough to embrace it, and we cannot say positively upon the evidence that he erred in so concluding.

In respect to the claim to recoup damages, for deficiencies in the work, it is sufficient to say, that the evidence was conflicting as to the quality of the work and materials, and as to omissions or variances from the contract by the plaintiff, and that the finding of the referee upon that head cannot be reviewed. The conflict did not arise, as suggested, upon the testimony of the plaintiff alone, but he called several experts, each of whom were examined very fully as to the quality of the different materials, and specifically as to the different parts of the workmanship, who united in declaring that both the materials and the workmanship were good; in all respects as good as is usual in houses of the same description.

The subcontractors, Hargrove and Clare, averred that they agreed with the plaintiff to do the plastering work in and about the premises described in the complaint; that they completed the same as far as it was possible, when they were prevented from completing it by the defendants, George E. and Sarah J. K. Williams, and that what they did was worth $103, and this averment was not controverted by the plaintiff or by any of the defendants. They also proved upon the trial that they did the plastering work upon the building, and each of them was minutely examined upon the trial as to the character of the work and the quality of the materials. The defendant, Heany averred that he put up the marble mantels, under an agreement with the plaintiff, and proved upon the trial that he put up four in the building, which were the same in every respect, as near as he could make them, as those in Mr. Tucker's house, which, by the plaintiff's contract, was the pattern to be followed; that the parlor mantel was $45, and the other three $20 each. If the statement of the claims of these subcontractors were defective, which I by no means concede, it would still make no difference, as the Act of 1863 declares that that shall not impair or affect the rights of the claimant, but that they shall have relief according to their rights as they shall appear in evidence, and the evidence was amply sufficient to show that the work done and materials furnished by these subcontractors was in pursuance of the contract made with the plaintiff for the erection of the building, and that is all that is

requisite under the Act of 1863, which expressly provides, § 1, for liens in favor of persons employed by a contractor or subcontractor. The work done and materials furnished by them being admitted, and the value, their claims were properly found by the referee to be valid liens, prior in point of equity to that of the plaintiff's.

The Act of the 13th of April, 1855, declared that the judgment should direct the sale of the interest of the owner in the land and premises upon which the lien existed, to the extent of the right of the owner at the time of the filing of the notice, and this being a statutory provision, it had to be strictly followed (*Hauptman* v. *Catlin*, 20 N. Y. 247). This Act and all former Acts are repealed by the Act of 1863, § 12, except so far as it may be necessary to carry into effect liens acquired before the Act of 1863 took effect. The lien here took effect under the Act of 1863, and that Act contains no such provisions as the one referred to in the Act of 1855, but simply provides, § 5, that judgment shall be rendered according to the equity and justice of the claims of the respective parties, and § 9, that it may be enforced by an *execution*, under which the property covered by the lien may be sold, and the proceeds distributed as ordered by such judgment. The lien becomes absolute to the extent of the right, title, and interest which the owner had in the premises at the time when the notice was filed, which interest, according to the provisions of the Act, cannot be divested by any sale or transfer made after the commencement of the work or furnishing of materials. No such sale or transfer exists in this case, the one which was made having been adjudged to have been fraudulent and void, and the decree therefore directs that the premises be sold under execution, and provides for the manner in which the proceeds shall be distributed, which is in strict conformity with the provisions of the Act of 1863.

It remains but to consider the exceptions taken to the admission or to the rejection of testimony. Meehan was asked, if joints filled with putty would be good workmanship. No foundation had been laid for such a question, at least none is pointed out, and I have failed to find any. The referee, therefore, ruled correctly. The inquiry was immaterial.

The question put to Meehan, whether he could have finished the work by the 15th of February, if the delay in the plastering had not occurred, was admissible, as bearing upon the point, whether Williams and his wife had or had not assented to the delay on that account. The questions put to Hargrove and Clare, as to the cost of hard finish, were immaterial, but the inquiry could in no way prejudice the other defendants, as the work done by Hargrove and Clare, and the value of it, was admitted. The referee awarded therein only the amount claimed and sworn to in their answer, which was not controverted either by the plaintiff or by any of the defendants. The question, whether the plaintiff had a quarrel with Rowe, a real estate broker, and the answer to it, is too trivial for consideration. It could have no material bearing upon the result, whether the question was admitted or rejected, and it was wholly immaterial what answer was or might have been returned to it. The hearing before the referee covered a period of more than three months, and the proceedings in the case embrace over nine hundred printed folios, and to send the case back for another trial we should require some thing more grave than a trivial inquiry like this (*Forrest* v. *Forrest*, 23 N. Y. Rep. 510). The report of the referee should be affirmed.