MICHAEL GROSS *et al. against* JOHN T. DALY AND THE
WINDSOR HOTEL COMPANY, IMPLEADED.

Under the mechanics' lien act for the City of New York (L. 1863, c. 500), the lien
attaches upon the filing of the notice, notwithstanding the owner has theretofore
fraudulently assigned all his interest in the premises; and in a proceeding to
foreclose the lien, the fraudulent transferee may be made a party, and the va-
lidity of his title adjudicated.

The case of *The Mechanics' &c. Bank* v. *Dakin* (51 N. Y. 519) distinguished, and
*Meehan* v. *Williams* (2 Daly, 367) followed and reaffirmed.

APPEAL from two orders of the special term overruling de-
murrers.

The action was brought to foreclose a mechanic's lien on
premises known as the Windsor Hotel property, situated on
Fifth avenue, between 46th and 47th streets, in the city of
New York.

The complaint, among other things, alleged that the plaint-
iffs, in pursuance of an agreement made by them with the de-
fendant John T. Daly, who at the time was the owner of
the leasehold premises in question, furnished materials and
did work on said buildings, amounting in the aggregate to
$39,025 41; that, on the 23d day of October, 1873, when the
lien was filed, there was due to the plaintiffs an unpaid balance
of $7,423 61, which Daly refused to pay; that, on the 27th day
of September, 1873, the said John T. Daly made a pretended
conveyance of the said premises to The Windsor Hotel Com-
pany (composed of himself, his brother, Wm. H. Daly, and his
son, Thomas Daly), for the pretended consideration of $850,000;
that, at the same time of said conveyance, the said John T.
Daly was, and still remained insolvent and unable to pay his
debts; that the consideration aforesaid consisted merely of the
stock of the corporation, which was entirely worthless, and had
no market or other value; and that the said conveyance was
fraudulent and void, and was made with the intent and for the
purpose of hindering, delaying and defrauding the plaintiffs
and other creditors of the said John T. Daly.

The plaintiffs accordingly demanded that the said convey-ance from John T. Daly to The Windsor Hotel Co. be declared and adjudged fraudulent and void, and set aside ; that the plaintiffs' lien be enforced and foreclosed; that the rights of all the parties to the action be determined, and that the said leasehold premises be sold, etc.

The defendants, John T. Daly and The Windsor Hotel Co., interposed separate demurrers, on the ground that an action to foreclose a mechanic's lien was improperly united with an action to set aside a fraudulent conveyance, and also on the ground that the complaint did not state facts sufficient to constitute a cause of action.

The demurrers were overruled at the special term, and the defendants appealed.

*William R. Martin*, for appellant Daly.

*James B. Kissick*, for appellant The Windsor Hotel Com-pany.

*Charles Jones*, for respondent.

DALY, Chief Justice.—The conflicting decisions of the Com-mission, in *Mechanics' &c. Bank* v. *Dakin* (51 N. Y. 519), and of the Court of Appeals in *Thurber* v. *Blanck* (50 N. Y. 80), are embarrassing; the Commission holding that when a suit is commenced by attachment, and a judgment is recovered, the plaintiff, after issuing execution, and before *its* return, may maintain an equitable action to set aside a fraud-ulent assignment of a bond and mortgage, so that they may be applied to the payment of the judgment; and the Court of Appeals, holding that the equitable action in such a case can-not be brought until the remedy at law is exhausted, that is, until the execution issued upon the judgment is returned un-satisfied. The Commission held that by the service of the at-tachment a lien was acquired upon the bond and mortgage, which could be enforced after judgment, and to which the fraudulent assignment was no impediment; whilst the Court

of Appeals held that no lien could be acquired by the attachment upon a bond and mortgage, the legal title to which was in a third person; that in the case of *choses in action* and *debts*, the lien is constructive, and cannot operate through an intermediate or inchoate legal title; that in such a case no debt at law is owing to the defendant, and there is nothing for the attachment to operate upon; that it can only be created upon legal rights, and not mere equitable interest; that *debts* and *choses in action* are legal assets under the attachment law only when the process acts directly upon the legal title, and that when they are so situated as to require the equitable exercise of the power of the court to place them in that condition, they are to be regarded as equitable assets only, and that to allow the equitable action upon the issue of an execution and before its return, in such a case, would be in direct conflict with the rule, that a creditor has no standing in court to reach equitable assets, until his remedy at law is exhausted.

This decision of the Court of Appeals is not in conflict with the cases in which it has been held that the equitable action may be brought after the issuing of execution and before its return, to set aside a fraudulent transfer of goods and chattels, or of real estate, which can be levied upon under the execution when the fraudulent impediment is removed (*McElwain* v. *Willis*, 9 Wend. 561; *Heye* v. *Bolles*, 2 Daly, 231; *McCullough* v. *Colby*, 5 Bosw. 477; *North American Fire Ins. Co.* v. *Graham*, 5 Sandf. 200; *Falconer* v. *Freeman*, 4 Sandf. Ch. Pr. 565; *Greenleaf* v. *Mumford*, 30 How. 30), nor the cases which have held that where the sheriff takes property subject to seizure upon attachment, but which has been fraudulently transferred, the plaintiff is not, after the the service of the attachment, a mere creditor at large, but a creditor who has a *specific* lien upon the goods attached, and that the sheriff, as his bailee, has a like lien and the right to show, in defense of an action for the taking of the property, that the title of the party claiming it is fraudulent as against the attaching creditor (*Rinchey* v. *Stryker*, 28 N. Y. 45; Id. 31 N. Y. 140; 26 How. Pr. 75; *Van Heusen* v. *Radcliff*, 17 N. Y. 580; *Noble* v. *Holmes*, 5 Hill, 194; *Van Etten* v. *Hurst*, 6

Hill, 311). Indeed, the latter class of cases are especially excepted in the opinion of the Court of Appeals, which is carefully limited to equitable assets not capable of seizure under an attachment or execution, and the legal title to which has been transferred fraudulently or otherwise, and is in harmony with a previous decision of the Court of Appeals in *Lawrence v. The Bank of the Republic* (35 N. Y. 320), in which it was held that no lien is acquired by the service of the attachment upon the proceeds of property fraudulently assigned by the debtor, when the property had been sold by the assignee and its identity gone.

So far as these conflicting decisions affect the question before us in the present case, I think we must follow that of the Court of Appeals. The decision of the Commission, it is true, has the weight of an unanimous decision of the whole court, whilst in the Court of Appeals the judges were divided, three concurring with the chief justice, and three dissenting, that is, practically, four judges in the Commission decided one way, and four judges in the Court of Appeals exactly the reverse. But the question was argued in the Court of Appeals four months before the argument of the case in the Commission, and was decided in the Court of Appeals a month after the argument in the Commission; and when the decision was afterwards made in the Commission, it was apparently without any knowledge that the question had already been decided by the Court of Appeals, as no reference is made to the contrary decision of that court in the opinion delivered in the Commission. The Court of Appeals, moreover, is the permanent court, and may hereafter, if its decision was erroneous, review it, should the question arise again; whereas the Commission is a temporary body, whose duration is limited and will expire within the present year.

The point before us is, whether a party who had filed a notice of a mechanic's lien upon the land and building in this city known as the Windsor Hotel, in the mode required by the statute, is entitled, in a proceeding brought in this court to enforce the lien, to the equitable aid of the court to set aside a conveyance of the property made before the notice was

filed, upon the ground that the conveyance was fraudulent and void as against creditors. The question was raised by demurrer, which was overruled by the judge below, for the reason that the point had been decided by this court in *Meehan v. Williams* (2 Daly, 367), a decision, we are now asked to reconsider in consequence of the decision of the Court of Appeals before referred to, as to the nature and effect of the lien created by the service of an attachment.

I do not see that the decision, that the lien acquired by the service of an attachment does not extend to equitable assets, the legal title to which, though fraudulently obtained, was vested in a third person when the attachment was obtained, affects the questions whether, under the lien law, the court has the equitable power to set aside a fraudulent conveyance of the land and building, which is an impediment to the enforcement of the lien. I shall however re-examine the question, as it is an important one, the solution of which involves an investigation of much intricacy and difficulty.

The act of 1863 declares that the notice to enforce the lien shall be served upon all who have filed notices of liens, and also upon the owner and upon *incumbrancers.* Here is an express provision that incumbrancers may be made parties, and a fraudulent grantee, in whom the legal title to the premises has been vested by a fraudulent transfer on the part of the owner, is an incumbrancer. While operative as between the parties, it is an incumbrance as to creditors, which may be set aside in equity, because, being void as to them, as it is an impediment to their right to have his claim satisfied.

The act of 1863, also provides that the court may determine the rights of all who, under the act, may be made parties, and that such judgment, or decree may be rendered as to the rights and *equities* of the several parties among themselves, and as against any owner, as shall be just (L. 1863, c. 500, §§ 2, 5, 7).

The Revised Statutes declare (2 Rev. Stat. 137, § 1), that every conveyance of any estate or interest in lands, made with intent to hinder, delay or defraud creditors or other persons of their lawful suits, damages, debts or demands, shall,

as against the persons so hindered, delayed or defrauded, be void. The statute does not say judgment creditors; but so far as respects the equitable power of the court to set aside such a fraudulent conveyance as an impediment to the creditor's legal right to have his debt satisfied, it has been uniformly interpreted as meaning judgment creditors; or in the language of Judge DENIO, in the case first below cited, creditors clothed with their judgments and executions, or *such other titles* as the law has provided for the collection of debts (*Van Heusen* v. *Radcliff*, 17 N. Y. 584; *McElwain* v. *Willis*, 9 Wend. 561). It is in fact, in this respect, only declaratory of the law as it previously existed, for the rule was well established before the Revised Statutes, that a court of equity would not aid creditors at large in the collection of their debts, but would interpose only when they had obtained a lien by the recovery of a judgment, and had exhausted their legal remedy under the judgment, either by the issuing and return of an execution *nulla bona*, or the issuing of an execution, where the equitable aid of the court was asked to set aside a fraudulent conveyance of land by the judgment debtor, which was an impediment to the judgment creditor's obtaining a satisfaction of his judgment by the sale of the land under the execution, to which he was entitled, if the sheriff could find no goods or chattels wherewith to satisfy the execution (*Brinckerhoff* v. *Brown*, 4 Johns. Ch. 671; *McElwain* v. *Willis*, 9 Wend. 561, 565, 567; *Heye* v. *Bolles*, 2 Daly, 235).

Judge Bronson, in *Noble* v. *Holmes* (5 Hill, 194), after declaring that a fraudulent sale could not, under the provision in the Revised Statutes above referred to, be impeached by a creditor at large, added: "It must be by a creditor having a judgment and execution, *or some other process which authorized a seizure of the goods*," and this latter qualification, as well as that of Judge Denio, "such other titles as the law has provided for the collection of debts," were approved as a proper qualification and statement of the rule, by Judge Balcom, who delivered the opinion of the Court of Appeals in *Rinchey* v. *Stryker* (28 N. Y. 45), a case which, in my judgment, has an important bearing upon the question under consideration, in

which none of the judges dissented, and the construction given to the law in which has been recognized and approved by Chief Justice Church in *Thurber* v. *Blanck* (50 N. Y. 86), as I have already stated.

It was held in the case of *Rinchey* v. *Stryker*, that a creditor who had obtained an attachment, under which the sheriff seized property which the debtor had disposed of with intent to defraud his creditors, was not to be deemed a creditor at large, but a creditor having a *specific* lien upon the property attached. That in an action brought against the sheriff for the taking of the property, the sheriff might show in his defense, that the title of the person claiming the property, was fraudulent and void as against the attaching creditor, having been acquired by an assignment made with an intent to hinder, delay and defraud creditors. That this defense was available, even before the plaintiff in the action in which the attachment was obtained *had established his debt by the recovery of a judgment;* but that the plaintiff in the action for the taking of the property might defeat the attaching creditor on either of two grounds: 1st, that he had a good title to the property when it was attached; 2d, that there was no debt to justify the issuing of the attachment, and that where he relied upon the latter ground, the defendant would have to prove the existence of the debt, if it had not then been established by the recovery of a judgment, or if the judgment were recovered after the parties were at issue, the judgment might be given in evidence upon the trial to prove the debt; and lastly, that there was no objection to the two issues being tried in the same action—that is, the existence of the debt and the allegation that the title on which the plaintiff relied was fraudulent and void as against the attaching creditor.

A specific lien is one that attaches to certain property, or to some particular piece of property, as contradistinguished from a *general* lien, such as a factor has for his general balance (Cross on Lien, pp. 13, 15, 246). The lien of the mechanic or material-man, given by the statute, is of the former kind, as it attaches to a particular piece of property—the building and the lot upon which it stands, and is a security, that whatever

interest the owner who made the contract for the work had in the lot and building at the time when the notice was filed which creates the lien, may be sold to satisfy the claim, if the claim is afterwards established by the recovery of a judgment. This is a *specific* lien; quite as much so as that which an attaching creditor has in property seized under an attachment, which property the debtor has disposed of to defraud his creditors. In that case, the fraudulent conveyance vests the legal title in the vendee, because it is valid as between vendor and vendee, and is void only as to the vendor's creditors. The creditor's right to take it under process, or by any other proceeding which authorizes the seizure of it as the debtor's property, is therefore recognized, because he has the right to impeach the validity of the transfer upon the ground of fraud, and he takes it subject to the obligation of establishing the fraud, if either he or the officer is sued for taking it; and if he fails to do so, either he, if it was done with his assent, or the officer, or both, are answerable in damages for the wrongful taking, the same as any other trespasser. In the one case, if the fraudulent conveyance is no bar to the creditor's seizing the property under the attachment, so in the other, it should be no bar to the creditor's filing the notice by which he obtains the lien; the statute having given him that mode of collecting his debt out of the property towards the erection of a structure upon which he furnished labor or supplied materials.

The plaintiffs in the present suit are creditors of John T. Daly, with whom, when he was lessee of the land, in 1871, they contracted to perform certain work and labor, and furnish materials for the building erected upon it, to the amount of $39,025 41, upon which payments were made by him to the amount of $31,601 80, leaving $7,423 61, due by Daly to the plaintiffs, when they filed their notice of lien, on the 23d of October, 1873. On the 27th of September, 1873, or about a month before the plaintiffs filed the notice of their lien, Daly conveyed the lease and leasehold premises to a corporation which had been formed under the general incorporating act, by the title of the Windsor Hotel Company; which conveyance, it is alleged, was fraudulent as having been made with an

intent to hinder, delay and defraud the plaintiffs and the other creditors of Daly. The plaintiffs are creditors who contracted directly with the owner by whom the building was erected upon the premises, and if, as I have said, a creditor has the right to attach property which his debtor has disposed of for the purpose of defrauding him and other creditors, a creditor similarily situated should certainly have the right to impose the lien which the statute has created for his benefit. Both rights—the right to an attachment and the right to a lien—are given by statute, and if the conveyance is as to the creditor void, by reason of the fraud, then the right to the lien is in no way impaired, and may be imposed by filing the notice required by the statute. The mechanic's lien law, enacted in this and other States, is founded upon a principle extensively pervading the civil law, the equitable spirit of which recognizes a proprietary interest in those who bestow labor or furnish materials towards the improvement of the property of another. It has been applied extensively by courts of equity in cases of joint purchasers, joint tenants, and in cases of the possession of land under defective titles, or of tenancy, where there was no joint interest, nor any agreement, express or implied, authorizing the making of repairs or improvements. Courts of equity have, where the party making repairs or improvements has acted *bona fide* and innocently, and they are a substantial benefit to the land, treated the expenditure as a charge for which the party making it has a lien upon the land, which they have enforced by compelling the opposite party to allow it upon an accounting in equity, or where he came into court for equitable relief (*Hibbert* v. *Cook*, 1 Sim. & Stu. 552; *Robinson* v. *Bedley*, 6 Madd. 2; *Bright* v. *Boyd*, 1 Story, 478); and Judge Story was of the opinion that even a bill might be sustained to grant active relief to a *bona fide* possessor of land under a defective title, who, whilst in possession, made permanent meliorations and improvements enhancing the value of the land ; such a claim, in his opinion, being founded in the clearest natural equity (2 Story's Eq. Jur. § 1237 and note). The same principle pervades the common law, and "has been," to use the language of Mr. Cross (p. 24), "at all times

favored by the courts as consonant with every principle of equity and justice." The common law courts upheld the right of a party to retain property in his possession, the value of which had been increased by his labor, or which he had carried, stored and protected, until the claim for his services were satisfied; which was all that he could do however, for he could not sell the property to satisfy the lien, unless by express agreement (*Jones* v. *Pearle*, Str. R. 556). But where the labor or the materials went to the erection of a structure upon, or the improvement of land in the possession of another, there could be no detention, as there was no possession, nor any way apparent to the courts in which the equitable right could be charged as an incumbrance upon the land, until the enactment of statutes which supplied by their provisions the necessary machinery; and as these statutes are not in derogation of the common law, but in aid and advancement of a principle extensively recognized and applied under it, they should be liberally and beneficially construed. Viewed in this light, it would be, in my judgment, an unwarrantable construction of the lien law, to hold that an owner of land with whom a contract was made for the erection of a building upon it, can wholly deprive the contractor of the lien contemplated by the statute, by a fraudulent conveyance of the property, made with intent to cut off the right of lien and to defraud creditors generally. It was held in *Schaps* v. *Reilly* (50 N. Y. 61), that a mortgage upon real estate, executed to raise money thereon, without any delivery, or the payment of any consideration therefor by the mortgagee, which was assigned to an assignee who in good faith paid the full consideration therefor, and which was duly recorded, would not defeat a mechanic's lien filed after the execution of the mortgage, but before the delivery of it to the assignee for value; although, as between the mortgagor and the assignee, the mortgage was valid. If such be the effect of the execution of a mortgage void for the want of consideration and delivery the like effect would much more follow where a conveyance is void as to the creditor filing the notice of his lien.

If I am right in the conclusion, that such a conveyance,

being void as to creditors, could not operate to prevent the plaintiffs, who were creditors, from filing their notice of lien, and from its having the effect given by the statute to the filing of such a notice, then the validity of the conveyance, as respects the plaintiffs, would necessarily come in question in the proceedings instituted to enforce the lien, because to entitle the plaintiffs to enforce it, it would be indispensable for them to show that the conveyance, as to them, was fraudulent and void. If the property has been conveyed *bona fide* to a third party, the filing afterwards of a notice of a lien can have no effect, because there is nothing to which a lien can attach (*Quimby* v. *Sloan*, 2 E. D. Smith, 613; *Ernst* v. *Reed*, 49 Barb. 367; Laws of N. Y. for 1866, c. 752; Guernsey on Liens, and the cases there cited, §§ 89, 90). Among the things therefore which a party must allege and prove in the proceeding to enforce the lien, is that the owner who made the contract under which the work was performed, or the materials were furnished, had some interest in the property at the time when the notice of the lien was filed (see *Bailey* v. *Johnson* 1 Daly, 61, and the numerous cases cited in Guernsey on Liens, § 80); for if he had not—if he had then parted with all his interest—there would be nothing, as I have said, to which a lien could attach—nothing against which it could be enforced. The plaintiffs, after serving their notice to enforce their lien, could not move a step, unless they could allege and prove that Daly had some right, title and interest in the property; and being met by the fact that he had (before they filed their notice), conveyed all the interest he had in it to the Windsor Hotel Company, their proceeding must fail, unless, being creditors, they can impeach the validity of that transfer, and show that as to them it was fraudulent and void. Why should they not be allowed to do so in this proceeding, which they have brought in a court clothed with equitable jurisdiction, and when the act allows incumbrancers to be made parties, and declares that the court may make such judgment or decree, in respect to the rights and *equities* of all the parties between themselves, as may be just? Long ago, under the act of 1851, which contained no such provisions, we held in *Doughty* v.

*Devlin* (1 E. D. Smith, 625), that in administering the statute, the court acts as a court of equity, and may adapt its judgment or decree to the special circumstances of the case ; the statute itself being ostensibly founded in equity ; and in *Sullivan* v. *Decker* (1 E. D. Smith, 699), Judge WOODRUFF and myself held, Judge INGRAHAM dissenting, that we had necessarily, under that act, the power to make previous incumbrancers parties, although there was not then, as there is now, any express provision in the statute allowing them to be made parties—a construction which the Legislature confirmed by a dsitinct recognition of the power in the subsequent act of 1855. Nor must the lienor, in the enforcement of the lien, wait until the owner has set up as a defense, that he has parted with all his interest. He may never appear. It may not be his interest to do so. The proceeding cannot affect him, if he has parted *bona fide* with his interest ; and if he has parted with it fraudulently, he may be equally indifferent, as the proceeding cannot affect the fraudulent vendee, unless he can be made a party. As the lienor, on the contrary, must show affirmatively, if he seeks to enforce the lien, that the owner who made the contract under which the labor was performed, or the materials were furnished, had an interest in the premises when the notice was filed, and knowing the fact that he has parted with it fraudulently, the lienor has the right, when he initiates the proceeding to foreclose his lien, to make the fraudulent vendee a party ; as he must set up the fraud, to enable him to establish that the conveyance was void as to him, and that the grantor had an interest when the notice was filed, to which the lien attached, and which may be decreed to be sold to satisfy the lienor's claim.

There may possibly be some difficulty in the Marine and Justices' courts, as those courts have no general jurisdiction in equity, but no embarrassment need arise under the statute from that cause ; for it is not obligatory in any case to go into those courts for the enforcement of the lien. The statute simply provides (§ 4), that where the aggregate of liens is less than $500, the proceeding to enforce may be brought in any court in this city ; but if they exceed that amount, it must be brought in a court of record ; so that any lien, no matter how

small the amount, may be enforced in one of the courts of record in the city, having equitable jurisdiction.

Nor is the equitable right to have the fraudulent conveyance set aside, to be deferred until the lienor has established his claim by the recovery of a judgment in the proceeding, which would necessitate the bringing of another equitable action afterwards, to enable him to set aside the incumbrance, so as to reach and sell, in the lien proceeding, all the right, title and interest of the fraudulent grantor in the premises. The Court of Appeals have held, as has been shown in *Rinchey* v. *Stryker*, *supra*, that where property conveyed to defraud creditors is seized upon attachment, the attaching creditor's claim may be proved, and the fraudulent transfer established, in the same action ; so, in the equitable action or proceeding brought to foreclose the lien, the claim may be proved, and the fraud established ; for the court may (§ 7), "order any question" (to be) "tried by a jury, or refer the whole matter to a referee to examine and pass upon the rights of the respective parties." The pleadings, said Judge Woodruff in *Doughty* v. *Devlin* (1 E. D. Smith, 625), may be so framed as to present any *issue* which the parties may desire to raise respecting the matters in controversy ; it being plain that the Legislature intended that the proceedings should in all respects assume the form of an ordinary civil action and be governed by the same rules as other civil actions, brought for the enforcement of *similar rights ;* an intention much more apparent in the act of 1863 than it was in the statute of 1851, to which he referred.

Liens, which are a *charge* upon real estate, are enforced in equity, and the facts and circumstances may be shown in the action or proceeding in equity which constitute and make them a charge upon the estate (*Herbert* v. *Cooke*, 1 Sim. & Stu. 552; *Bradley* v. *Bosley*, 1 Barb. Ch. 152, 153). A creditor at large has no such lien, until he has recovered a judgment, nor then in equity until he has exhausted all his legal remedies. Indeed, strictly speaking, he has no lien at all by the judgment, unless it is given by statute, or arises under some proceeding authorized by statute (*Neale* v. *The Duke of*

*Marlborough*, 3 My. & Craig, 416, 417. Our Revised Statutes provide (vol. 2, p. 389, § 3), that judgments of courts of record " shall *bind* and *be a charge* " upon the lands, &c., of the person against whom the judgment was rendered, and judgments of inferior courts are embraced by subsequent statutes. The rule therefore, which prevails in equity, that a creditor cannot have a fraudulent conveyance by his debtor set aside, until the creditor has recovered a judgment and exhausted his legal remedy, is founded in the fact that he has no lien nor anything which in equity is a charge upon the legal or equitable estate or property of his debtor. Chancellor Kent, in *Brinckerhoff* v. *Brown* (4 Johns. Ch. 671), carefully examined, after a review of the previous authorities, the grounds upon which this jurisdiction is exercised, and rests it upon the fact that the creditor has a judgment *which is a lien upon real estate*, and which gives him a *legal preference*, or *lien*, upon chattels, so as to entitle him, after he has exhausted his legal remedy, to the equitable aid of the court. This rule therefore, that a judgment must be recovered, and all legal remedies exhausted, does not apply under the mechanic's lien law ; for the mechanic, by filing his notice, acquires a lien, which is a charge upon the building and the ground upon which it stands, to the extent of all the right, title and interest which the contracting owner then has in the premises, and which, as a security for the collection of the mechanic's claim, is as effectual as the lien of a judgment. In enforcing the lien, there is no such requirement as first exhausting all legal remedies before equitable aid can be afforded. It is in itself, an equitable proceeding, or rather action, for it is so denominated in the act of 1863, to foreclose a lien created by the operation of the statute, and made by it a charge upon the land and building ; and if this charge, or lien, cannot be enforced, and the owner's interest reached, in consequence of a fraudulent transfer of it by him, then the equitable aid of the court is, in such an action, incident to the right to have the lien enforced. Everything appears to have been done in the act of 1863, to clothe the court with the most ample powers, for after providing that incumbrancers may be made parties, it declares (§§ 5, 7), that

the court is to proceed without regard to matters of form; that the proceedings, whilst in progress, are to be amendable at all times without costs; that every party is at liberty to take proof for or against any claim; that if the parties notified object or insist on any claim, the court may take the proofs and determine the *equities of the parties*, and that (§ 5), judgment is to be rendered *according to the equity* and justice of the claims of the respective parties. If the lienor is to have judgment according to the *equity* of his claim, then a judgment in equity would be that a fraudulent conveyance which obstructs the enforcement of the claim as a lien, be set aside. Two propositions are very plain to my mind: (1) That a fraudulent conveyance of the premises by the owner, which is void as to his creditors, does not prevent a mechanic who has contracted with the owner, and is thereby one of his creditors, from imposing a lien by filing the requisite notice; and, (2) That a court having equitable jurisdiction, in which the proceeding is brought to foreclose such a lien, may, where the fraudulent grantee has been made a party, inquire into the fraud, and if it is established, decree that the conveyance was void as to the complainant; that it in no way affected his right to create a lien upon the interest which the owner had in the premises at the time of the conveyance, and at the time of the filing of the notice; and that the complainant having established his claim against the owner, the right, title and interest of the owner should be sold to satisfy it; which decree or judgment (§ 7), would be binding and conclusive alike upon the owner and the fraudulent grantee. I have thus at great length, in view of the importance and difficulty of the question, re-examined our decision in *Meehan* v. *Williams* (*supra*), and am satisfied that it is correct.

LOEW, J.—The learned judge whose orders we are now reviewing followed the decision of the general term of this court in the case of *Meehan* v. *Williams* (2 Daly, 367). It was there held that in an action to foreclose a mechanic's lien, under the act of 1863 (L. 1863, c. 500), the plaintiff may impeach the validity of what purports to be an absolute conveyance of

the owner's interest in the premises on which the lien is claimed, made during the progress of the work and before the notice of lien is filed. This doctrine we are now asked to review in the light of the more recent decision of the Court of Appeals in *Thurber* v. *Blanck* (50 N. Y. 80). In the last mentioned case, it was held, by a divided court, that under the attachment laws no lien could be created upon a bond and mortgage, which, it was claimed, had been fraudulently assigned by the debtor ; that such a lien will not attach to mere equitable assets or interests, and can only be acquired upon the legal rights of parties, and that, as the title to the bond and mortgage was in a third party, there was nothing for the attachment to act upon, until the intermediate legal title was removed by an action in equity. I find, however, that the Commission of Appeals, in *M. & T. Bank* v. *Dakin* (51 N. Y. 519), which was a case on all fours with the one just referred to, unanimously came to a directly opposite conclusion on the same question. It is, therefore, rather difficult to determine what the law really is on this point.

But whatever rule may finally obtain in reference to acquiring liens under the attachment laws, it seems to me that, under the lien laws relative to this city, a valid lien may be created, notwithstanding a fraudulent conveyance may have been made before the filing of the notice of lien. The act of 1863, as originally passed by the Legislature, contained a provision to the effect that no sale, transfer or incumbrance, made at any time after the commencement of the work or furnishing of material, should impair or affect a lien acquired under said act (§ 1). This provision the law-makers subsequently repealed, by enacting that a party who may become entitled to a lien, in pursuance of the aforesaid act, shall have such lien for the full and fair value of the labor performed or materials furnished by him upon the building and lot of land upon which the same shall stand, " to the extent of all the right, title and interest which the owner shall have therein, at the time of filing the notice of lien, * * * and to no greater extent " (L. 1866, c. 752, § 1). It will be observed that a lien can thus be created by a compliance with the lien law, to the extent of *all the right, title and interest* of the owner in the

premises. So that, although the owner may now, after the commencement of the work or furnishing of materials, in good faith convey, mortgage or otherwise incumber his property, free from any lien the notice of which was not previously filed, yet if he has any *right, title* or *interest* whatever in the premises, at the time of filing the notice, the lien will attach to and take effect upon it. And I am of the opinion that the court can, in an action like the present, inquire into the *bona fides* of a conveyance, and that it may, in a proper case, declare the same fraudulent and void, and set the same aside, if necessary to a proper enforcement of the lien.

To hold otherwise would virtually nullify the lien law in very many cases, and thus defeat the manifest intention of the Legislature in passing the act. Because, all an owner would have to do to evade the law, would be to make a mere formal transfer of his interest in the property to a third party, just prior to the finishing of the work and the anticipated filing of the lien notice. The claimant would then be compelled to pursue the ordinary remedy provided for the collection of debts; and if, after perfecting judgment and exhausting his remedy at law, under the execution, he could reach the equitable interest of the owner in the property at all, it would have to be either in an action brought by a receiver (Code of Pro. § 299), or else by a suit in equity, such as an action in the nature of a creditor's bill.

Now I am persuaded that the Legislature, in passing the lien law, intended to provide a speedy and effectual mode by which contractors, sub-contractors and material-men might obtain satisfaction of their respective claims or demands in one action or proceeding. To accomplish this object, they have declared that the proceeding to enforce or foreclose the lien is to be instituted by a notice requiring the parties to appear in court within a comparatively short space of time after the service thereof; that all, prior as well as subsequent, lienors in respect to the same property shall be made parties; that each claimant shall file a brief statement of his claim, to which any party interested may, within five days thereafter, state his objections; that the issue thus formed is to be tried as in ordi-

nary actions, but in a summary manner, and that judgment *in personam* as well as *in rem* may be rendered (§§ 4, 5, 7, 9 ; *Barton* v. *Herman*, 3 Daly, 320). Moreover, in order that full and complete justice may be done to all persons in any wise interested in the premises, it is further provided that the notice to foreclose the lien is to be served not only on the owner, but also on any incumbrancer (§ 5) ; and whether the parties appear and plead, or neglect to appear and object to or insist on any claim, the court is authorized and required to take the proofs and afford such relief, and render such judgment or decree as to the rights and equities of the respective parties, among themselves and as against any owner, as justice and equity may require (§§ 2, 5, 7).

It is true, a valid lien must be created before a party is entitled to a judgment in any form in such an action (*Donnelly* v. *Libby*, 1 Sweeny, 259 ; *Barton* v. *Herman*, *supra*, 325). But it does not necessarily follow that a lienor has not acquired a valid lien merely because the owner has ostensibly transferred all his interest in the property, by what on its face purports to be an absolute conveyance. If the transaction was a fraudulent one, the parties to it will not be permitted to take advantage of their own wrong, and thus by fraud deprive a *bona fide* lienor of his rights under the statute. If all the requirements of the lien act have been complied with, the lien will—as already intimated—take effect upon whatever right, title and interest the owner has in the property ; and it may become a question for the court to determine, on the trial, whether or not the owner had any, and if so what, interest in the premises upon which a lien could be created.

I agree with the learned chief justice who delivered the opinion in *Meehan* v. *Williams* (*supra*), that the term " *incumbrancer*," as used in the fifth section of the act, is comprehensive enough to include an alleged fraudulent grantee. He may, therefore, be made a party to such an action or proceeding, and his rights can be as carefully considered and as fully protected therein as in any other action.

It follows from what has been said, that the court, in an action like the present, is invested with all the requisite power

and authority—if warranted by the evidence—to adjudge a
conveyance fraudulent and void as against a lienor; that two
causes of action are not improperly united in the complaint in
this action; and that the orders appealed from should be af-
firmed, with costs.

LARREMORE, J., concurred.

Ordered accordingly.